## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-249


**CHALMERS, COLLINS & ALWELL, INC.**

**VERSUS**

**BURNETT & COMPANY, INC., ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20143893
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**SHANNON J. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.


**AFFIRMED.**


**Randall K. Theunissen**
**Michael E. Parker**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1350**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Chalmers, Collins & Alwell, Inc.**

**Jennifer E. Michel**
**Jamie F. Landry**
**Lewis, Brisbois, Bisgaard & Smith**
**100 E. Vermilion St., #300**
**Lafayette, LA 70501**
**(337) 326-5777**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Certain Underwriters**

**GREMILLION, Judge.**

Chalmers, Collins & Alwell, Inc. (Chalmers), appeals the summary judgment granted in favor of Certain Underwriters at Lloyd's (Underwriters). This judgment involves coverage under a commercial liability policy issued by Underwriters to Chalmers and Underwriters' duty to defend. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Chalmers contracted with Haland Operating Services, LLC (Haland), to undertake engineering consultancy services in the drilling of a well. A number of problems with the drilling resulted in Haland retaining another engineering firm to complete the well.

Chalmers pursued arbitration against Haland. Haland responded to the arbitration dispute with allegations of its own and asserted a reconventional demand in the arbitration proceedings. Chalmers made demand on Underwriters to defend it in arbitration against Haland's reconventional demand.

When Underwriters declined to undertake Chalmers' defense, Chalmers filed a petition entitled, "Complaint for Breach of Contract, Declaratory Relief, and Breach of Implied Covenant of Good Faith and Fair Dealing," against Underwriters and Burnett and Company, Inc., its insurance agent. Underwriters denied the allegations in the petition. Both parties filed motions for summary judgment; Chalmers asserting Underwriters should be ordered to defend it in the arbitration and Underwriters asserting that there was no coverage under its policy. The trial court denied Chalmers' motion and granted Underwriters' motion. This devolutive appeal followed.

## ASSIGNMENTS OF ERROR

Chalmers asserts that the trial court erred in denying its motion for summary judgment and in granting Underwriters' motion.

## ANALYSIS

The obligation of the insurer to defend its insured is broader than its obligation to indemnify its insured against liability. *Am. Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969). Whether the insurer owes its insured a defense is usually determined within the allegations of the claimant's petition. *Id.* "[U]nless the petition unambiguously excludes coverage" under those allegations, the insured is owed a defense. *Id.* at 259. Further, even when the petition discloses many acts or omissions for which there would be no coverage, "the duty to defend may nonetheless exist if there is at least a single allegation" that would not unambiguously be excluded. *Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, Inc.*, 611 So.2d 158, 161 (La.App. 3 Cir. 1992). Courts look to the factual allegations of the petition, rather than conclusory allegations, in determining whether the insurer must defend the insured. *Id.*

Logic dictates that if the policy unambiguously excludes coverage for purposes of the insurer's duty to defend, the insurer owes no duty to pay sums its insured is legally obligated to pay.

The policy issued by Underwriters contains an insuring agreement whereby Underwriters provides:

> We will pay those sums that that insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this Insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this Insurance does not apply. . . .

The policy also contains a number of exclusions, including, pertinently, "[b]odily injury" or "properly damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. There are a number of exceptions to the exclusion for contractual liability.

Underwriters maintain that the reconventional demand of Haland against Chalmers asserts facts that constitute liability under the contract. Acts of negligence against Chalmers, Underwriters argues, constitute acts for which the policy excludes coverage. The trial court agreed. We agree.

Haland's reconventional demand begins at paragraph 12 of its answer to the arbitration demand. Paragraphs 12 through 26 do discuss the terms of the Master Service Agreement (MSA) between Haland and Chalmers, including the parties' respective obligations regarding performance of work, warrantying that work, payment and billing, termination of the agreement, reporting, dispute resolution, indemnity and insurance, and choice of laws. Paragraphs 27 through 32 discuss the circumstances under which Chalmers was retained to work on the well at issue. They also discuss the technical demands this particular well posed. These paragraphs allege that the sands through which the well was bored were "tight." These sands, therefore, required specific equipment suited for those drilling conditions.

The facts of the incident in dispute begin at paragraph 33 of the reconventional demand, and it is with these that we must focus our analysis. Difficulties arose when the drill bit lost several cones in the hole. Those had to be cleaned out. According to paragraphs 41 through 43:

41.

Chalmers reported they thought the hole was clean after the first mill. However, the second mill locked up essentially right away. For an unexplained reason, the rig Chalmers had specifically recommended Haland to choose for these conditions did not have a torque meter on it. Consequently, Chalmers failed to realize the mill had locked up and high torque was developing.

42.

As a result, about 2,400 feet of drill pipe twisted apart inside the casing.

43.

Chalmers tried to fish the drill pipe out using several fishing tools, such as overshots and spears. Apparently the spears could successfully grip the pipe, but the rig— again strangely— was not capable of producing enough strength to pull it out.

After several attempts to retrieve the pipe, a chemical charge was used to sever the pipe below the casing, and the pipe was retrieved. This severing of the pipe allegedly resulted in Haland losing valuable lease rights for deeper minerals. Haland alleged that the rig recommended by Chalmers was "singularly unsuited to perform cleaning or fishing operations," and the geological conditions the well presented "made fishing and cleaning operations a reasonably likely outcome." These acts resulted in Haland losing certain rights in the well conferred by its lease.

The policy contains and amendatory endorsement that provides:

In consideration of the premium charged and notwithstanding anything to the contrary contained in this policy, it is understood and agreed that form CO 00 01 12 04, COMMERCIAL GENERAL LIABILITY COVERAGE FORM SECTION I - COVERAGES, COVERAGE A., BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2., Exclusions, is amended to include:
. . . .

Liability for:

(1) loss of or damage to any well or hole,

(a) which is being drilled or worked over by or on behalf of the Insured, or

4

> (b) which is in the care, custody or control of the Insured, or
>
> c) in connection with which the Insured has provided services, equipment or materials.
>
> (2) any cost or expense incurred in redrilling or restoring any such well or hole or any substitute well or hole.

This provision effectively and unambiguously excludes coverage for the allegations contained in Haland's reconventional demand resulting from the damage to the well.

Paragraphs 47 through 54 outline the "objective evidence" Haland maintains supports it claims against Chalmers. Those allegations add nothing essential to Haland's demands in terms of asserting negligence on Chalmers' part. The acts alleged therein are the same as addressed above and would be excluded.

Paragraphs 55 through 67 allege the costs and damages attendant to the acts of negligence alleged in paragraphs 33 et seq. They also allege that Chalmers failed to pay certain contractors and other acts that led to Haland retaining another engineering services contractor. Those acts are excluded by the amendatory endorsement mentioned above and/or by the exclusion of contractual liability. That amendatory endorsement also excludes from coverage liability for "removal or recovery of any drilling tool, pipe, collar, casing, bit, pump, drilling or well servicing machinery or any other equipment while it is below the surface of the earth in any well or hole."

Paragraphs 68 through 93 allege various damages to third parties' equipment caused by Chalmers' alleged negligence, all of which is similarly excluded, and credits and offsets Haland contends it is entitled to, should it be found to owe Chalmers anything under the MSA. Paragraphs 94 through 99 allege that

5

Chalmers is also liable to it and third parties by virtue of the indemnity clause established in the MSA. The contractual liability exclusion would preclude coverage for those losses.

Paragraphs 100 through 106 allege that Chalmers agreed with Baker Hughes, Inc., to procure a type of insurance on equipment leased from it, known as a "lost equipment indemnity buy-back" or "LEIB." Haland alleges that the MSA precluded Chalmers from entering into a LEIB, yet Chalmers allowed Baker Hughes to bill Haland over $53,000 for the premiums charged on the LEIB. The cost of this LEIB constitutes liability for breach of contract and not negligence, and would not be covered. Similarly excluded as contractually-incurred liability would be the costs of restocking fees billed to Haland, as outlined in paragraphs 107 through 112.

Loss and damage to the well, as alleged in paragraphs 113 through 119, are excluded by the amendatory endorsement already quoted above. Paragraph 120 represents a catch-all:

120.

CLAIM FOR OTHER DAMAGES AND RELIEF

Haland claims for the above monetary damages based on the present claims against it, and invoices it has received, by and from third party vendors and contractors.

To the extent Chalmers is liable for various categories of damages that may grow after this arbitration— including claims by third parties for property lost or damages in the incident— Haland prays for a general declaration of Chalmers['] liability for these costs going forward, and that Chalmers shall indemnify, or indemnify and defend, as appropriate, Haland for any such claims or invoices received in the future.

Haland also claims any other relief to which it is entitled in law or in equity, in tort or in contract, including all damages, attorneys' fees, costs, and interest, as appropriate and without limitation, and all

6

findings and declarations of Haland's rights vis-à-vis Chalmers, in the Chalmers MSA and otherwise, discussed above.

Chalmers maintains that this "other relief" allegation precludes a finding that coverage was not unambiguously excluded. We disagree. Again, we are to look at the factual allegations of the demand. *Duhon*, 611 So.2d 158. No new facts are alleged in this paragraph.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Certain Underwriters. The assignment of error asserting that the trial court erred in denying Chalmers' motion for summary judgment is rendered moot. All costs of this appeal are taxed to plaintiff/appellant, Chalmers, Collins & Alwell, Inc.

**AFFIRMED.**