DREW, J.
|Jn this lawsuit stemming from a physical altercation at a business, the business’s insurer, Colony Insurance Company, sought supervisory review of the denial of its motion for summary judgment. We granted the writ to docket. Concluding that the trial court erred in denying the motion for summary judgment, we reverse the judgment.
FACTS
On April 10, 2015, Ebarb was a customer at Scot’s Audio & Trim when he was allegedly struck by Joseph Dyer, an employee of Scot’s. Colony had issued a Commercial Auto Liability Policy to D. Scot Boswell d/b/a Scot’s Audio & Trim (“Boswell”). The policy period was from May 29, 2014, to May 29,2015.
On February 29, 2016, Ebarb filed suit against Boswell, Colony Insurance Company, and Joseph Dyer. Ebarb alleged that:
*525 • On or about April 10, 2015, Dyer approached Ebarb as he was on the premises of Scot’s Audio and Trim having services performed on his automobile.
• Without warning or provocation, Dyer assaulted and battered Ebarb, causing his injuries.
• Dyer was charged with criminal offenses for his physical attack on Ebarb.
• Dyer subsequently pled guilty to simple battery.
• Dyer committed a battery upon Ebarb in contravention of Dyer’s duty and obligation under the law to not harm another and as a result of his unjustified attack upon Ebarb, proximately caused the personal injuries suffered by Ebarb.
Regarding Boswell’s liability, Ebarb alleged:
The negligence, errors, omissions, and acts of Defendant, D. SCOT BOSWELL, D/B/A SCOT’S AUDIO AND TRIM, were a cause in fact of injuries sustained by Plaintiff in that | ^Defendant D. SCOT BOSWELL, D/B/A SCOT’S AUDION AND TRIM:
A. Failed to properly supervise employees;
B. Failed to do proper vetting of employees;
C. Failed to prevent the assault and battery; and
D. Other improper/negligent acts as may be proven at trial.
Boswell filed an answer on April 4,2016, raising the affirmative defense that Ebarb instigated the fight by taunting Dyer, and was therefore responsible for his own injuries.
Colony filed its answer on April 25, 2016. Three months later, Colony filed a motion for summary judgment in which it argued that it did not provide insurance coverage to Boswell, Dyer, or any other party for the claims asserted by Ebarb as those claims were specifically excluded from coverage under the policy it had issued to Boswell.
Boswell filed an opposition to the motion for summary judgment in which he disputed that coverage was not provided under the policy. He contended that liability coverage was provided in Section II of the policy, Coverage A, entitled, “Garage Operations—Other Than Covered Autos.” Boswell attached the police report from the incident to his opposition.
Boswell also filed a cross-claim against Colony in which he alleged that pursuant to a Louisiana Endorsement to “Garage Operations—Other Than Covered Autos,” Colony was obligated to defend Boswell until the suit was resolved, pay for the reasonable attorney fees incurred by Boswell until Colony assumed his defense, and indemnify Boswell for Ebarb’s claims and demands.
A hearing on the motion for summary judgment was held on October 17, 2016. In denying the motion for summary judgment, the trial court noted that Colony failed to produce any evidence showing that the cause of faction giving rise to the lawsuit was excluded from coverage under its policy. The court added that there was no admissible evidence demonstrating that a battery actually occurred, as the police report was inadmissible hearsay. The court also found that there was a dispute as to whether Dyer was an employee of Scot’s at the time of the incident. Thus, because it determined that there were disputes as to material facts, the trial court concluded that summary judgment should be denied until further discovery was completed.
Colony applied for a supervisory writ, which this court granted to docket.
*526 DISCUSSION
A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate, ie., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. Samaha v. Rau, 2007-1726 (La. 2/26/08), 977 So.2d 880.
In Bilyeu v. National Union Fire Ins. Co. of Pittsburgh, PA, 50,049 (La. App. 2 Cir. 9/30/15), 184 So.3d 69, writ denied, 2015-2277 (La. 2/19/16), 187 So.3d 462, this court outlined the general principles concerning the interpretation of insurance policies on a motion for summary judgment:
The interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved on motion for summary judgment. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set out in the Civil Code. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search |4of the parties’ intent. Only if the policy cannot be construed simply, based on its language, because of an ambiguity, will the court look to extrinsic evidence to determine the parties’ intent. Just because a policy provides general coverage but then subjects it to certain exclusions does not make the policy ambiguous.
Citations omitted. Id. at p. 8, 184 So.3d at 74.
A battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact. Caudle v. Betts, 512 So.2d 389 (La. 1987). The intention need not be malicious nor need it be an intention to inflict actual damage; it is sufficient if the actor intends to inflict either a harmful or offensive contact without the other’s consent. Id.
The Colony policy at issue contained an endorsement which provided, in part:
CHANGES IN THE GARAGE COVERAGE FORM
This endorsement modifies insurance provided under the following:
GARAGE COVERAGE FORM
CHANGES IN SECTION II—LIABILITY COVERAGE
Part B. Exclusions is changed as follows. Paragraphs 18 through 21 are added.
[[Image here]]
19. Assault, Battery, or Assault and Battery
“Bodily injury”, “property damage” or “personal and advertising injury” arising out of:
a. “Assault”, “Battery” or “Assault and Battery” caused, directly or indirectly, by you, any “insured”, any person, any entity or by any means whatsoever;
b. the failure to suppress or prevent “Assault”, “Battery” or “Assault and Battery” by you, any “insured”, any person, any entity, or by any means whatsoever;
c. the failure to provide an environment safe from “Assault”, “Battery” or “Assault and Battery”;
hd. the failure to warn of the dangers of the environment which could contribute to “Assault”, “Battery” or “Assault and Battery”;
e. “Assault”, “Battery” or “Assault and Battery” arising out of the negligent employment, investigation, hiring, *527 supervision, training or retention of any person;
f. the use of any force to protect persons or property whether or not the “bodily injury” or “property damage” or “personal and advertising'injury” was intended from the standpoint of you, any “insured” dr any person or committed by or at the direction of you, any “insured” dr any person;
g. the failure to render or secure medical treatment or care necessitated . by any “Assault”, “Battery” or “Assault and Battery”; or
h. death, including any allegations of wrongful death, arising out of items a. through g. listed above.
[[Image here]]
SECTION VI—DEFINITIONS is amended and the following is added for the purpose of this endorsement only:
“Assault” means:
1. an intentional act or unintentional act, including but not limited to sexual abuse, sexual assault, intimidation, sexual harassment, verbal abuse, or any threatened harmful or offensive contact between two or more persons creating an apprehension in another of immediate harmful or offensive contact, or
2. an attempt to commit a “Battery”.
“Battery” means an intentional or unintentional act, including but not. limited to sexual abuse, sexual battery, sexual molestation, or any . actual harmful or offensive contact between two or more persons which brings about harmful or offensive contact to another or anything connected .to another.
“Assault and Battery” means the combination of an “Assault” and a “Battery”.
The petition alleges that a battery occurred. Boswell does • not dispute that a battery was committed. The policy is clear and unambiguous that coverage is not provided for alleged liability arising from an assault and/or battery committed upon or by any person. Therefore, for Colony’s purposes on this motion for- summary judgment, it would not matter whether Dyer was in the course and scope of-his employment at the time that he struck Ebarb. Moreover, Ebarb’s claims that Boswell failed to properly supervise Dyer, I sfailed to properly vet him, and failed to prevent the assault and battery are specifically addressed by subsections (b) and (e) of the “Assault, Battery, or Assault and Battery” exclusion:
b.< the failure to suppress or prevent “Assault”, “Battery” or “Assault and Battery” by you, any “insured”, any person, any entity, or by any means whatsoever;
[[Image here]]
e. “Assault”, “Battery” or “Assault and Battery” arising out of the negligent employment, investigation, hiring, supervision, training or retention of any person[J
Boswell contends that the damages that Ebarb allegedly suffered from the alleged failure to properly vet Dyer are separate and apart from the damages that he allegedly sustained from the assault and battery. This argument is not persuasive, as the vetting process falls under exclusion (e) as it arose out of the allegedly negligent “employment, investigation, hiring, supervision, training or retention” of Dyer.
In Byrd v. Linton, 48,191 (La. App. 2 Cir. 6/26/13), 117 So.3d 1268, writ denied, 2013-2093 (La. 11/22/13), 126 So.3d 485, Byrd was seriously injured after she. was *528 beaten outside a lounge by Linton, who was subsequently convicted of second degree battery. Among the defendants to Byrd’s lawsuit were the lounge, lounge owners, and lounge employee. Byrd alleged that they failed to remove Linton from the premises even though he was visibly intoxicated, failed to intervene in the melee between Linton and Byrd, and served Linton alcohol and contributed to the drunken rage in which he attacked her. Colony insured the lounge with a commercial general liability policy as well as a liquor liability endorsement. Both policies contained nearly identical exclusions which denied coverage for liability arising out of an assault, battery, or assault and battery committed 17by any person. In affirming a summary judgment dismissing Byrd’s claims again Colony, this court stated:
The clear wording of the battery exclusion evidences an intent for the exclusion to apply to any claim arising out of an assault and/or battery. Thus, it is absolutely clear that any way Byrd may have worded her claim, it arose from a battery by Linton, who was criminally convicted of same. Due to the clear wording of the exclusion, such a claim is obviously excluded from coverage under either the CGL policy or the liquor liability endorsement. The. trial court correctly held that the occurrence which gave rise to the liability was the battery of Byrd by Linton regardless of how her cause of action is termed and, therefore, policy coverage was excluded.
Id. at p. 5, 117 So.3d at 1271-2. Therefore, regardless of how Ebarb characterized his tort, the battery was the occurrence which gave rise to his claims against defendants.
Insurance coverage in this matter is not salvaged by Ebarb pleading that Bowell is liable for “[o]ther improper/negligent acts as may be proven at trial.” First, regardless of how Ebarb worded his claim, it arose from a battery by Dyer. Second, courts look to the factual allegations of the petition, rather than conclusory allegations, in determining whether the insurer must defend the insured. Chalmers v. Burnet & Co., Inc., 2015-249 (La. App. 3 Cir. 10/7/15), 175 So.3d 1100, writ denied, 2015-2060 (La. 1/8/16), 184 So.3d 695. In Chalmers, the court disagreed with the argument that a catch-all “other relief’ type of allegation precluded a finding that coverage was not unambiguously excluded. The court noted that it was to look at the factual allegations of the demand, and no new facts were alleged in that catch-all paragraph.
Boswell also asserts that Colony owes it a duty to defend. Regarding this duty, this court has stated:
Is An insurer’s duty to defend suits against its insured is broader than the scope of the duty to provide coverage. The duty to defend is determined by the allegations of the injured plaintiffs petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. This is known as the “eight comers rule,” whereby an insurer must look to the “four corners” of the plaintiffs petition and the “four corners” of its policy to determine whether it has a duty to defend.
In this analysis, the allegations of the petition are liberally interpreted to determine whether they set forth grounds that bring the claims within the scope of the insurer’s duty to defend. If, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit.
*529 Citations omitted. Longleaf Investments, L.L.C. v. Cypress Black Bayou Recreation & Water Conservation Dist., 49, 508, pp. 7-8 (La. App. 2 Cir. 2/26/15), 162 So.3d 479, 483-4, writ denied, 2015-0619 (La. 5/22/15), 171 So.3d 251.
The “garage operations” section of the policy originally stated, in part:
SECTION II—LIABILITY COVERAGE
A. Coverage
1. “Garage Operations”—Other Than Covered “Autos”
a. We will pay all sums an “insured” legally must pay as damages because of “bodily injury” or “property damage” to which this insurance applies caused by an “accident” and resulting from “garage operations” other than the ownership, maintenance or use of covered “autos”. We have the right and duty to defend any “insured” against a “suit” asking for these damages. However, we have no duty to defend any “insured” against a “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply. We may investigate and settle any claim or “suit” as we consider appropriate. Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance—“Garage Operations”—Other Than Covered 19“Autos” has been exhausted by payment of judgments or settlements.
A Louisiana endorsement then modified this section:
A. Changes in Liability Coverage
[[Image here]]
2. With respect to “Garage Operations”—Other Than Covered “Autos” in the Garage Coverage Form, the second paragraph of A.l.a. is replaced by the following:
We have the right and duty to defend any “insured” against a “suit” asking for these damages. We may investigate and settle any claim or “suit” as we consider appropriate. Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance—“Garage Operations”—Other Than Covered “Autos” has been exhausted by payments of judgments or settlements.
What changed was that the endorsement removed the second sentence, which had read, “However, we have no duty to defend any ‘insured’ against a ‘suit’ seeking damages for ‘bodily injury’ or ‘property damage’ to which this insurance does not apply.”
Boswell asserted that this change eliminated the language in the policy removing Colony’s obligation to defend the insured when the policy does not provide coverage. It now states the duty ends only when its insurance limits have been exhausted; thus, Boswell asserted that Colony has a duty to defend him in this matter, which includes the payment of' attorney fees. Boswell further argued that Colony had a duty to defend because the allegations of this petition do not unambiguously exclude coverage in that the petition includes allegations of the failure to properly supervise employees and a broad all-encompassing claim of negligent acts that may be proven at trial on the merits.
The suggestion that the removal of the second sentence from the second paragraph expanded Colony’s duty to defend a suit to include Imcircumstances when the insurance would not apply leads to absurd consequences. The second paragraph must be read in conjunction with the first paragraph. When that is done, it clear that “these damages” in the first sentence of *530 the second paragraph are the damages identified in the first paragraph:
[Djamages because of “bodily injury” or “property damage” to which this insurance applies caused by an “accident” and resulting from “garage operations” other than the ownership, maintenance or use of covered “autos”.
Coverage is clearly and unambiguously excluded by the terms of the policy and the allegations of the petition. Accordingly, the trial court erred in denying Colony’s motion for summary judgment.
Finally, the trial court erred in denying the motion for summary judgment in order for additional discovery to be conducted. There is no absolute right to delay an action on a motion for summary judgment until discovery is completed. Simoneaux v. E.I. du Pont de Nemours & Co., 483 So.2d 908 (La. 1986); Finley v. Racetrac Petroleum, Inc., 48,923 (La. App. 2 Cir. 4/9/14), 137 So.3d 193. The only requirement is that the parties be given a fair opportunity to present their claim. Eason v. Finch, 32,157 (La. App. 2 Cir. 8/18/99), 738 So.2d 1205, writ denied, 99-2767 (La. 12/10/99), 751 So.2d 861; Finley, supra.
The parties do not dispute that a battery occurred, and it makes no difference for purposes of Colony’s coverage whether or not Dyer was in the course and scope of his employment when he struck Ebarb because the exclusion applied to an assault or battery caused by any person.
JjjDECRBE
With each party to bear its own costs, the judgment denying Colony’s motion for summary judgment is REVERSED.