ALFRED A. MANSOUR, Judge.
Plaintiff, Edward J. LeRay, sued Shell Offshore, Inc. (SOI — erroneously designated Shell Oil Co. in the petition), Cameron Crewboats, Inc., and its insurer, St. Paul Mercury Insurance Company (St. Paul), under the Jones Act and the general maritime law. He claims damages for injuries to his back and aggravation of a pre-existing spondylolisthesis.
SOI filed a third-party demand and a cross-claim for indemnification against Cameron Crewboats, Inc., and St. Paul.
Plaintiff had been employed by Cameron Crewboats, Inc., as a deck hand on M/V William R. McCall. The crew of M/V William R. McCall consisted of plaintiff, Richard Moore who was the engineer, and Alexis Lafort who was the captain of the vessel. M/V William R. McCall was under contract with SOI for the transportation of personnel and supplies to various oil rigs and drilling platforms off the coast of Louisiana.
On April 17, 1984, M/V William R. McCall left Grand Chenier, with plaintiff and the other two crew members aboard, to deliver certain supplies and materials to SOI’s offshore platforms. As the vessel approached Platform D of Vermillion Block 22, the Gulf was somewhat choppy with four to six foot waves. On board the vessel was a wire mesh basket approximately eight feet long and four feet wide. Also on board was an ice maker weighing between two and three hundred pounds which was to be delivered to Platform D. It was to be placed in the cargo basket so that it could be lifted from the deck of the vessel to the platform. Milton Ardoin, an employee of SOI, was operating a crane on the platform. He was lowering a cable and slings which were to be used to hoist the basket and ice maker onto the platform. Because of the choppy waters Captain Lafort decided that the crane should not be used to lift the ice maker into the basket, and he instructed Moore and LeRay to perform this task manually. There were some variations in the testimony of plaintiff and other witnesses as to who made the decision to have the crew members manually lift the ice maker into the basket, however, we accept plaintiff’s testimony on this point. LeRay and Moore lifted the ice maker onto the side of the basket and balanced it in that position until both were able to climb into the basket. While they were attempting to lower the ice maker to the floor of the basket the legs of one side of the ice maker became entangled in the side of the basket causing the entire weight of the ice maker to shift to plaintiff.[1] This, according to plaintiff, caused his back injury.
Plaintiff contended that his injuries were caused by the negligence of SOI’s crane operator, the negligence of Moore and La-fort as employees of Cameron Crewboats, Inc., and the unseaworthiness of the vessel. The unseaworthiness claim is based on plaintiffs theory that there were not sufficient crewmembers aboard M/V William R. McCall to handle the unloading operation safely. Plaintiff contends that Captain La-fort was negligent in ordering the crew to lift the ice maker manually when the boat was pitching and rocking; that if the Captain felt that it was unsafe for the ice maker to be lifted by the crane he should have known that it would be unsafe to have it lifted by the crewmembers. He also contends that Moore was negligent in allowing the weight of the ice maker to shift to him.
The defendants did not dispute plaintiff’s seaman status. They denied any negligence on the part of their employees, and alleged that the plaintiff’s injuries were caused by his own negligence.
Parenthetically, we point out that plaintiff had not revealed his congential back condition in his employment application. Further, he had made claims previously for back injuries on other jobs. None of this was known to Captain Lafort before the events of April 17, 1984.
*251 At the conclusion of the evidence, the trial judge dismissed plaintiffs suit, giving oral reasons therefor. As to the unseaworthiness claim the judge said:
“I’m going to dispose of the unseaworthiness by just saying that there is no evidence at all regarding the unseaworthiness of the ship, its equipment or its crew. There’s simply no evidence on that point.”
The judge also rejected plaintiff’s Jones Act negligence claim, stating:
“[Njegligence is defined as the doing of some act that a reasonably prudent person would not do or the failure to do something that a reasonably prudent person would do under the same or similar circumstances. The mere fact that an accident happened, standing alone, does not allow me to draw an inference that an accident was caused by anyone’s negligence. The defendant has every right to expect a seaman to cope with the ordinary hazards that must prevail, even on a seaworthy vessel, and the owner of a ship is not required to furnish an accident-free ship. It is not called upon to have the best of appliances and equipment or the finest of crews, but only such equipment and such crew as is reasonably proper and suitable for the intended use.
“The evidence in this case show[s] that the conditions that day had seas of four to six feet. The evidence is that operations in a situation where seas are four to six feet is customary, and the height of those seas does not require a curtailment of the type of operation which was in progress in this particular case.
“The involvement of the captain in this case, assuming that ... well, accepting the plaintiff’s personal testimony, was that the captain directed that the ice maker be loaded manually into the basket. Now, I understand that that may be questionable, but I’ll accept that. We must look at Captain Lafort’s assessment of the situation. First, he did not know that he had a seaman whose back had a defect. And next, he did not know the weight of the ice maker. The ice maker has been estimated at anywhere from 125 pounds, in Captain Lafort’s estimation, up to 200 pounds in the estimation of the other hand, as well as the plaintiff. It’s not unordinary for hands aboard a vessel to be required to pick up a 200 pound item to move about, and it is not alleged nor proven that Captain La-fort was adamant about the method of picking it up. It’s simply reasonable under the circumstances that the first effort to move the ice maker would be done manually. If that’s not done that way, then the hands would be expected to request assistance, either other manual assistance or mechanical assistance. And the Court cannot find under these circumstances that Captain Lafort acted in any manner negligently.
“The other method by which negligence of the company could be located would be possibly through the other deckhand, but the other deckhand was of equal authority with LeRay and simply assisted him in making the manual placement of the ice maker. So in view of the findings in this case that there is no fault on the part of the defendant, then I’m led to a conclusion that there’s no liability.”
We agree with the reasons given by the trial judge. See Duerden v. PBR Offshore Marine Corp., 471 So.2d 1111 (La.App. 3 Cir.1985), writ denied, 476 So.2d 355 (La.1985). The evidence was to the effect that the normal crew of the M/V William R. McCall consisted of three members. There was no evidence that the crew was insufficient for the type of loading and unloading operations performed by the vessel. Nor do we find that there was any negligence on the part of defendants for the same reasons as stated by the trial court.
The trial judge's findings of fact will not be disturbed unless clearly erroneous. Guidry v. Davis, 382 So.2d 250 (La.App. 3 Cir.1980).
Cameron Crewboats, Inc., as Contractor, and SOI had entered into a Contract for *252 Marine Transportation Service which contained the following indemnity provision:
“CONTRACTOR shall hold harmless, defend and indemnify SOI, its directors, agents, employees and co-venturers against all claims, liability, causes of action and expenses, including attorneys’ fees and other costs of litigation on account of injury to or death of persons (including employees of SOI, contractor or any subcontractor) and/or damages to or loss of property (including CONTRACTOR’S but excluding SOI’s property) caused by, arising out of or in connection with CONTRACTOR’S performance of this contract, or the unseaworthiness of any vessel and not caused solely by the negligence or fault of SOI without any contributor negligence or fault of contractor or any subcontractors or their employees or agents.
SOI may • participate in the defense of any such claim or suit without relieving CONTRACTOR of any obligation hereunder.”
Also, in accordance with another provision of the contract, SOI had been named as an additional insured in Cameron Crew-boats’ policy of P & I Insurance with St. Paul.
SOI made demand on Cameron Crew-boats, Inc., and St. Paul to defend and indemnify it. When they declined, SOI undertook its own defense, and a few days before the trial began SOI settled with plaintiff for $15,000.00. St. Paul and Cameron Crewboats were aware of the negotiations before the final settlement was concluded.
Plaintiff sued for an amount in excess of $1,000,000.00. He alleged that SOI was liable because of the negligent acts of its employees. From the pleadings and the evidence, it is apparent that plaintiff had sought to establish liability of SOI because of some act of SOI’s crane operator, Ar-doin. Plaintiff claimed a serious back injury necessitating surgery and causing substantial disability. As against Cameron Crewboats, Inc., and St. Paul, he alleged negligence of the other members of the crew, and unseaworthiness of the vessel. Before the evidence was received at trial there was potential liability on the part of all defendants, including SOI.
By reducing the indemnity agreement to the basic provisions that apply to this case, it reads as follows:
“Contractor shall hold harmless, defend and indemnify SOI ... against all claims, liability, causes of action and expenses ... on account of injury to ... persons caused by, arising out of or in connection with contractor’s performance of this contract, or the unseaworthiness of any vessel and not caused solely by the negligence or fault of SOI ...”
The trial court rendered judgment in favor of SOI and against Cameron Crew-boats and St. Paul for the $15,000.00 together with attorney’s fees and the other expenses of defending the suit up to the time the settlement was concluded. We think this decision was correct.
In their brief the third-party and cross-claim defendants argued that:
“The plaintiff’s claim against Shell Offshore, Inc., was based entirely upon the alleged negligence of Shell’s employees, and particularly on the conduct of Milton Ardoin, who was operating the crane on the drilling platform at which the vessel was being unloaded. The plaintiff did not allege or contend that Shell was vicariously liable for any acts or omissions of members of the crew of the M/V William R. McCall or because of any condition of the vessel. Had Shell Offshore been found responsible for the plaintiff’s injuries, its liability would have been based entirely upon the negligence of its own employee in the operation of the crane on the production platform.”
They cite Tarlton v. Exxon, 688 F.2d 973 (5th Cir.1982), and LaNasse v. Travelers Insurance Co., 450 F.2d 580 (5th Cir.1971). In those cases the U.S. 5th Circuit Court of Appeals denied the platform owners’ claims for indemnification.
In LaNasse and Tarlton the injuries were caused by the negligence of the in-demnitees’ crane operator employees. In *253 each case, the Court found that the injuries did not arise from the operation of the vessel by the crew members. LaNasse and Tarlton are distinguishable from the instant case. Here, the crew members were performing duties contemplated by the charter agreement. They were off-loading the ice maker which under the terms of the charter agreement was to be delivered to SOI’s platform. These were services “arising out of or in connection with contractor’s (Cameron Crewboats’) performance of” the charter agreement. M/Y William R. McCall was not simply “a condition or locale for the accident” as in LaNasse. There was, as required by LaNasse “at least some causal operational relation between the vessel and the resulting injury.”
We, as did the trial court, find that the settlement amount of $15,000.00 was reasonable. Furthermore, the indemnitor and insurer refused the tender of defense and were aware of the settlement negotiations. Thus, SOI met the requirements of Parfait v. Jahncke Service, Inc., 484 F.2d 296 (5th Cir.1973).
We conclude that St. Paul is liable to SOI under the protection and indemnity (P & I) policy, and Cameron Crewboats, Inc., is liable to SOI under the indemnity provisions of the charter agreement.
AFFIRMED.

. This is plaintiffs version. Moore testified that plaintiff volunteered to lift the ice maker manually, and that the two of them lowered it into the basket. Apparently, he was not in agreement with plaintiffs assertion that the full weight of the ice maker shifted to plaintiff.