# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 19-30088

————

United States Court of Appeals
Fifth Circuit

**FILED**

February 18, 2020

Lyle W. Cayce
Clerk

CHEVRON ORONITE COMPANY, L.L.C.,
Successor in Interest to Chevron Chemical Company,

Plaintiff–Appellee,

versus

JACOBS FIELD SERVICES NORTH AMERICA, INCORPORATED,
Successor in Interest to J.E. Merit Constructors, Incorporated,

Defendant–Appellant.

————

Appeal from the United States District Court
for the Eastern District of Louisiana

————

Before JOLLY, SMITH, and COSTA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Wayne Bourgeois contracted mesothelioma after he was exposed to asbestos while working at, among other places, the oil refinery of Chevron Oronite Company, L.L.C. ("Chevron"). Bourgeois sued Chevron and several other defendants in state court, and Chevron settled with Bourgeois for $550,000. Chevron sought contractual indemnity from Jacobs Field Services North

No. 19-30088

America, Inc. ("Jacobs"). The district court, after granting partial summary judgment and holding a bench trial on stipulated facts, determined that Chevron was entitled to the full value of the settlement as well as about $256,000 in attorney's fees and costs. Jacobs appeals, and we affirm.

I.

On September 7, 2016, Bourgeois filed an *ex parte* petition to perpetuate deposition testimony under Louisiana Code of Civil Procedure Article 1430.1. Bourgeois had been diagnosed with mesothelioma and was concerned that he might not survive long enough to give his testimony in the ordinary course of litigation. Bourgeois indicated that he would give notice of his deposition to the expected adverse parties, and the state court granted his petition.

Bourgeois was deposed on November 30, 2016. Chevron was represented at the deposition, but Jacobs wasn't. Bourgeois testified that he'd worked at Chevron's refinery in Belle Chasse, Louisiana, for several employers, including J.E. Merit. Social Security records show that Bourgeois worked for Jacobs (J.E. Merit's successor in interest) from 1989 to 1994.

On March 9, 2017, Bourgeois sued Chevron and about two dozen others (but not Jacobs) for exposure to asbestos. Bourgeois alleged, *inter alia*, that he had contracted mesothelioma because he was exposed to asbestos during his employment as a welder. Against the "Premises Defendants," including Chevron, Bourgeois asserted negligence and strict liability claims.

On June 30, 2017, Bourgeois was again deposed. As before, Chevron was represented at the deposition, but Jacobs wasn't. That deposition was supplementary to his first one, and no further testimony was developed as to Bourgeois's work for J.E. Merit at the Belle Chasse facility.

In July 2017, Chevron discovered a contract (K-2485) with J.E. Merit for

2

No. 19-30088

work at the Belle Chasse facility that required J.E. Merit to defend and indemnify Chevron.  Based on that contract, Chevron sent an initial tender letter to Jacobs on July 24, 2017, demanding that Jacobs defend and indemnify Chevron in the *Bourgeois* case.  But that contract was for certain warehouse services and wasn't relevant to Bourgeois's employment as a welder.

Over the following weeks, Chevron's counsel followed up several times—with Jacobs's general counsel and its outside counsel—seeking a response to its tender letter.  Jacobs responded only sporadically to those messages.  Accordingly, Chevron subpoenaed documents pertaining to Jacobs's work at the Belle Chasse facility, requesting a response to its tender letter.  Jacobs finally rejected Chevron's initial tender on September 19, 2017.  Bourgeois died from his illness the next day.

On October 31, 2017, Jacobs produced documents responsive to Chevron's subpoena, including four contracts—K-2251, K-2542, K-2961, and K-3414—between Chevron and J.E. Merit.  Those contracts covered welding work between February 17, 1989, and February 16, 1993, which included the eighteen-to-twenty-four-month period during which Bourgeois worked at the Belle Chasse refinery.

K-2542, K-2961, and K-3414 contained the following provision requiring Jacobs to indemnify Chevron:

> [Jacobs] shall indemnify and save harmless [Chevron] from and against any and all loss, damage, injury, liability to or death of any person (including an employee of [Jacobs] or indemnitee) or for loss of or damage to property or for loss or damage arising from liens, attachments or patent infringement, including claims and reasonable attorneys' fees relating to any of the foregoing, caused in whole or in part by any act or omission by [Jacobs], its employees or agents, in any way connected with this Agreement or [Jacobs's] performance hereunder whether or not an indemnitee was or is

3

No. 19-30088

claimed to be concurrently or contributorily negligent, and regardless of whether liability without fault is imposed or sought to be imposed on, one or more of the indemnitees. The foregoing indemnification . . . shall not apply where such loss, damage, injury, liability, death or claim is the result of the sole negligence or willful misconduct of an indemnitee.

K-2251's indemnity provision differs only in that it excludes the word "sole" before "negligence."

On November 7, 2017, Chevron reasserted its tender demand, this time based on the proper contracts. Chevron also updated Jacobs on the status of the *Bourgeois* suit:

> **In light of settlement of the underlying suit being imminent and likely to occur as early as next week, please contact me immediately if Jacobs has changed its position on providing a defense and indemnity to Chevron.** As stated in our previous correspondence, if Jacobs does not acknowledge its responsibilities, Chevron may proceed against Jacobs for all costs of defense and settlement.

Jacobs continued to deny Chevron's requests for defense and indemnity. Nevertheless, Chevron kept Jacobs apprised of the status of the settlement negotiations and offered it an opportunity to participate in those discussions. Jacobs still denied Chevron's demands while reserving all rights and defenses.

On January 24, 2018, after months of negotiations, Chevron settled with Bourgeois for $550,000, which was within the $500,000 to $600,000 range that Chevron had twice communicated to Jacobs. Jacobs didn't participate in the negotiations and hadn't commented on the estimated settlement range.

On March 2, 2018, Chevron sued Jacobs under K-2251, K-2542, K-2961, and K-3414's indemnity provisions. Chevron sought, *inter alia*, damages "for the cost of settlement and defense in the *Bourgeois* lawsuit" as well as "attorney's fees and all costs of these proceedings. . . ." Jacobs denied liability.

In August 2018, Chevron and Jacobs moved for summary judgment. In

4

No. 19-30088

October 2018, the district court issued an order mostly granting Chevron's motion and mostly denying Jacobs's. The district court made four rulings: (1) To prevail on its indemnity claim, Chevron had to prove only that it was potentially, rather than actually, liable to Bourgeois; (2) at least one of contracts K-2542, K-2961, and K-3414 applied during the time when Bourgeois worked at the Belle Chasse refinery[1]; (3) Chevron had shown that it was potentially liable to Bourgeois; and (4) Chevron was entitled to recover attorney's fees and "ordinary litigation costs" related to its litigation of both *Bourgeois* and this case.

Those findings left only three issues for trial: (1) "the reasonableness of the settlement of the *Bourgeois* suit"; (2) the "particular amount of fees"; and (3) "the reasonableness of the amount of attorney's fees incurred in defending and settling the *Bourgeois* suit and in prosecuting the instant action." Accordingly, the parties agreed that the court would decide the case based on stipulated facts and briefs filed by the parties.

On January 23, 2019, the district court issued its Findings of Fact and Conclusions of Law. The court made three rulings that cut in Chevron's favor: (1) Jacobs bore the burden of proof to establish that Chevron's settlement of the Bourgeois case was unreasonable; (2) Jacobs was liable to indemnify Chevron for the full $550,000 value of the settlement because it hadn't met that burden; and (3) Jacobs was liable for $107,613.18 in attorney's fees and costs for the *Bourgeois* case and $148,256.16 in attorney's fees and costs for the indemnity suit.[2]

On appeal, Jacobs challenges the summary judgment and some trial

---

[1] The district court didn't consider K-2251 at summary judgment.

[2] The court also imposed post-judgment interest on the total fees and costs.

No. 19-30088

decisions.[3] Jacobs avers that the district court erred at summary judgment when it held that (1) Chevron only had to prove its potential liability in the *Bourgeois* suit, (2) Chevron had established that it was potentially liable, and (3) the contracts at issue entitled Chevron to indemnity, attorney's fees, and litigation costs for both *Bourgeois* and this case. As for the trial rulings, Jacobs contends that the court erred when it ruled that Jacobs (1) bore the burden to prove that the *Bourgeois* settlement was unreasonable and (2) had failed to make that showing.[4] We consider each contention in turn.

## II.

We first evaluate whether, for indemnity, Chevron had to prove actual, rather than potential, liability. Because the district court granted summary judgment on that issue—and because the governing standard of liability is a question of law—our review is *de novo*. *See Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996).

Sitting in diversity, we are obligated to "apply the substantive law of the forum state." *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 2649 (2019). "To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). Absent such a decision, "we make an

---

[3] We may review those summary judgment orders, because "an appeal from a final judgment sufficiently preserves all prior orders intertwined with th[at] final judgment." *Sindhi v. Raina*, 905 F.3d 327, 331 (5th Cir. 2018).

[4] Jacobs also raises a limited argument as to Chevron's attorney's fees and costs. It acknowledges that if Chevron prevails on the other issues, Chevron is entitled to at least some fees and costs. Nevertheless, it suggests that it "should not be required to reimburse Chevron for fees and costs incurred even before Chevron notified [Jacobs] of its alleged indemnity obligation." But Jacobs's briefing on that issue amounts to only half a page and cites no authority. Nor does it offer any facts to suggest that the rates charged, hours spent, or costs incurred by Chevron's counsel were unreasonable. "Inadequately briefed issues are deemed abandoned." *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006).

No. 19-30088

*Erie* guess, which requires us to employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes." *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 654 (5th Cir. 2019) (quotation marks omitted). "Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana."[5]

"As a general rule, one seeking indemnity for a settlement must show actual liability to recover." *Sullivan v. Franicevich*, 899 So. 2d 602, 609 (La. App. 4th Cir.), *cert. denied*, 902 So. 2d 1051 (La. 2005). "An exception to the rule is that the indemnitee need show only potential, rather than actual, liability . . . where the claim is based on a written contract. . . ." *Vaughn v. Franklin*, 785 So. 2d 79, 87 (La. App. 1st Cir.), *cert. denied*, 798 So. 2d 969 (La. 2001). An indemnitee also need show only potential liability if "the defendant tenders the defense of the action to the indemnitor." *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1216–17 (5th Cir. 1986). Those propositions are supported by the overwhelming weight of Louisiana[6] and Fifth Circuit[7] authority.

Related cases also recognize that an "indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements." *Parfait v. Jahncke Serv., Inc.*, 484 F.2d 296, 304 (5th Cir. 1973). But even under that standard, an indemnitee can avoid having to prove actual

---

[5] *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999) (footnote omitted). Therefore, though decisions of Louisiana's intermediate appellate courts are persuasive authority, they don't strictly bind us. *See Apache Deepwater*, 930 F.3d at 654.

[6] *See, e.g.*, *Tabor v. Anco Insulations, Inc.*, 999 So. 2d 258, 265 (La. App. 3d Cir. 2008), *cert. denied*, 6 So. 3d 770 (La. 2009); *Rovira v. LaGoDa, Inc.*, 551 So. 2d 790, 795 (La. App. 5th Cir. 1989), *cert. denied*, 556 So. 2d 36 (La. 1990).

[7] *See, e.g.*, *Coleman v. Sch. Bd. of Richland Par.*, 418 F.3d 511, 525 n.57 (5th Cir. 2005); *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 785 (5th Cir. 1997); *Terra Res., Inc. v. Lake Charles Dredging & Towing Inc.*, 695 F.2d 828, 832 (5th Cir. 1983); *Wis. Barge Line, Inc. v. Barge Chem 300*, 546 F.2d 1125, 1127 (5th Cir. 1977).

7

liability by giving the indemnitor, before a settlement is finalized, the choice of "(1) approving the settlement or (2) taking over the defense of the case. . . ." *Burke v. Ripp*, 619 F.2d 354, 357 (5th Cir. 1980). A formal tender isn't required: "If it can be shown that the indemnitor was afforded substantially the same protection that the above choice affords, then the indemnitee will have to show only potential liability." *Bodenheimer v. New Orleans Pub. Belt*, 845 So. 2d 1279, 1289 (La. App. 4th Cir.), *order stricken in part on other grounds*, 860 So. 2d 534 (La. 2003).

Because Chevron's claim is predicated on written contracts, it fits squarely within an exception to the "actual liability" rule. Moreover, even though it made a mistake in its first tender to Jacobs, Chevron still tendered its defense, based on the proper contracts, more than two months before settling *Bourgeois*. It also kept Jacobs apprised of the settlement discussions, including the likely settlement amounts, and offered Jacobs an opportunity to participate in the process. But Jacobs refused to take over the defense, declined to participate in settlement negotiations, and didn't lodge any objections to the settlement amount. In short, Chevron has easily met its burden to establish potential liability as the governing rule.

Nevertheless, Jacobs contends that Chevron should have been required to prove actual liability. Relying on *Parfait* and its progeny, Jacobs maintains that Chevron didn't afford it sufficient notice or a reasonable opportunity to defend against Bourgeois's claim because Chevron didn't provide notice to Jacobs, before Bourgeois's death, of (1) either of his depositions, (2) his underlying lawsuit, or (3) his expert's deposition. Those failures to notify, Jacobs suggests, deprived it of the opportunity to cross-examine critical testimony related to Chevron's potential liability.

But Jacobs' theory misapprehends the standard that those cases

8

establish. Chevron needn't have given Jacobs an opportunity to participate in *every aspect of the underlying lawsuit*—such a rule would be unworkable given that Jacobs wasn't a party to the *Bourgeois* suit. Instead, all that's required is an offer by the indemnitee, before settlement, for the indemnitor either to approve the settlement or to take over the defense. *See id.*; *Burke*, 619 F.2d at 357. Because that standard was easily satisfied, the district court didn't err in setting potential liability as the operative standard.

## III.

We turn next to whether Chevron established, as a matter of law, that it was potentially liable to Bourgeois. Because the district court examined submitted evidence when considering the motions for summary judgment, our inquiry has two components. Though we review the summary judgment *de novo*, we assess the district court's evidentiary rulings under the "manifest error" standard. *See Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2017). "Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 615 (5th Cir. 2018). "[T]his court may affirm . . . on any grounds supported by the record." *Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009). And we apply federal procedural law, such as the Federal Rules of Civil Procedure and Evidence, when sitting in diversity. *See Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993).

To establish potential liability, the indemnitor need only show "that the claim was not frivolous, that the settlement was reasonable, that it was untainted by fraud or collusion, and that the indemnitee settled under a reasonable apprehension of liability." *Fontenot*, 791 F.2d at 1218. The showing required isn't particularly onerous, and the indemnitee needn't go so far as to

prove the case against itself.

At issue is the district court's consideration of two depositions taken in *Bourgeois*: Bourgeois's and Kenneth S. Garza's (his expert). Federal Rule of Civil Procedure 32 governs when a deposition may be used "[a]t a hearing or trial."[8] Under Rule 32, a deposition may be used against a party if (1) "the party was present or represented at the taking of the deposition or had reasonable notice of it," (2) it would also be admissible under the Federal Rules of Evidence if the deponent were present and testifying, and (3) it meets one of seven enumerated criteria.[9] Our sister circuits have interpreted Rule 32 as creating an exception to the prohibition, in the Federal Rules of Evidence, of introducing hearsay. *See Fletcher v. Tomlinson*, 895 F.3d 1010, 1020 & n.9 (8th Cir. 2018) (collecting cases).

Depositions to perpetuate testimony are also subject to Federal Rule of Civil Procedure 27. "A deposition to perpetuate testimony may be used under Rule 32(a) in any later-filed district-court action involving the same subject matter if the deposition . . . would be admissible in evidence in the courts of the state where it was taken." FED. R. CIV. P. 27(a)(4). In Louisiana, such a deposition may be used in a later related action subject to the requirements of Article 1450 of Louisiana's Code of Civil Procedure. *See* LA. CODE CIV. PROC. ANN. art. 1432. "For a deposition taken to perpetuate testimony to be admissible under [Article 1450] where the witness is unavailable at trial, the party

---

[8] FED. R. CIV. P. 32(a)(1). On summary judgment, evidence, to be considered, need not be offered in a form admissible at trial; it need only be *capable* of being "presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

[9] FED. R. CIV. P. 32(a)(1). One of the enumerated exceptions allows for using depositions when the deponent is unavailable on account of death. *See* FED. R. CIV. P. 32(a)(4)(A). And depositions from earlier proceedings may be used in later ones if (1) the later action involves "the same subject matter between the same parties" or (2) the use is permitted by the Federal Rules of Evidence. FED. R. CIV. P. 32(a)(8).

against whom it is being used or with similar interests to that party must have been given the opportunity to cross-examine the witness." *Trascher v. Territo*, 89 So. 3d 357, 368 (La. 2012).

In addition to uses permitted by Rule 32, "[a] deposition previously taken may also be used as allowed by the Federal Rules of Evidence."[10] Those rules generally exclude hearsay, including former deposition testimony. *See* FED. R. EVID. 802. But out-of-court statements aren't hearsay if not offered to prove the truth of the matter asserted.[11]

Jacobs maintains that the district court erred in ruling that Chevron had established that it was potentially liable to Bourgeois. Jacobs's position has two components. First, it contends that the district court improperly considered Bourgeois's and Garza's inadmissible testimony because Jacobs wasn't present at, and didn't receive notice of, either deposition. Second, because no other evidence besides the depositions established that Chevron had a "reasonable apprehension of liability,"[12] Chevron couldn't have established its potential liability as a matter of law.

Though the district court's basis for its ruling is a bit muddled, considering the deposition testimony as summary judgment evidence didn't amount to

---

[10] 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 32.63 (3d ed. 2019); *see also id.* § 32.02 ("To some extent, the Rules of Evidence expand the admissibility of depositions beyond areas that are governed by Rule 32, or regulate admissibility with greater detail.").

[11] *See, e.g., United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 2655, *and cert. denied*, 139 S. Ct. 2658 (2019) ("Ordinarily, a statement is not hearsay if it is offered to prove the statement's effect on the listener."); *see also Trascher*, 89 So. 3d at 364 ("[W]hen an extrajudicial declaration or statement is offered for a purpose other than to establish the truth of the assertion, its evidentiary value is not dependent upon the credibility of the out-of-court asserter and the declaration or statement falls outside the scope of the hearsay exclusionary rule.").

[12] Jacobs doesn't contend that Bourgeois's claim against Chevron was frivolous or that the settlement with Bourgeois was tainted by fraud or collusion.

No. 19-30088

a "plain" or "indisputable" error or "a complete disregard of the controlling law." *Williams*, 898 F.3d at 615. Neither Bourgeois's nor Garza's deposition is offered to prove the truth of the matters asserted in it—*i.e.*, that Bourgeois was actually exposed to asbestos at Belle Chasse or that exposure to asbestos caused his mesothelioma.[13] The evidence is being offered only to show that Chevron settled the *Bourgeois* case under a reasonable apprehension of liability. Whether the specific details of Bourgeois's and Garza's testimony are true is irrelevant—what matters is what *effect hearing that testimony had on Chevron*. "[A] statement is not hearsay if it is offered to prove the statement's effect on the listener." *Reed*, 908 F.3d at 120. Because the depositions would have been admissible at trial for that purpose, the district court didn't err in considering them at summary judgment.[14] In light of those depositions, it's clear that Chevron was potentially liable to Bourgeois.

## IV.

We now consider whether the contracts' indemnity provisions entitle Chevron to indemnity as well as attorney's fees and ordinary litigation costs in both the *Bourgeois* suit and the indemnity case against Jacobs. Contractual interpretations are questions of law that we review *de novo*. *Hurt v. Fed. Nat'l Mortg. Ass'n & Home Securitization Tr. 1 (In re Homeowners Mortg. & Equity, Inc.)*, 354 F.3d 372, 375 (5th Cir. 2003). "We look to state law to provide the

---

[13] Chevron raised that theory in its summary judgment briefing, but the district court didn't address it.

[14] Even if the deposition were not admissible evidence in this case, "[a] court may take judicial notice of the record in prior related proceedings, and draw reasonable inferences therefrom." *Wilson v. Huffman (In re Missionary Baptist Found. of Am.)*, 712 F.2d 206, 211 (5th Cir. 1983). Since the *Bourgeois* deposition is admissible as evidence in this case, we need not decide whether a district court in an indemnity action may take judicial notice of the entire record of an underlying case (whether admissible under the rules of evidence in the indemnity action or not) for the limited purpose of establishing potential liability.

12

No. 19-30088

rules of contract interpretation." *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996). In Louisiana, the Civil Code provides those rules.

"Interpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE ANN. art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.* art. 2046. "The words of a contract must be given their generally prevailing meaning." *Id.* art. 2047. And "[w]ords susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." *Id.* art. 2048. In other words, "a contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance."[15]

The contracts at issue—K-2542, K-2961, and K-3414—contained the following indemnity provision:

> [Jacobs] shall indemnify and save harmless [Chevron] *from and against any and all loss*, damage, injury, liability to or death of any person (including an employee of [Jacobs] or indemnitee) or for loss of or damage to property or for loss or damage arising from liens, attachments or patent infringement, *including claims and reasonable attorneys' fees relating to any of the foregoing*, caused in whole or in part by any act or omission by [Jacobs], its employees or agents, *in any way connected with this Agreement* or [Jacobs's] performance hereunder *whether or not* an indemnitee was or is claimed to be *concurrently or contributorily negligent*, and *regardless of whether liability without fault* is imposed or sought to be imposed on, one or more of the indemnitees. The foregoing indemnification . . . shall not apply where such loss, damage, injury,

---

[15] *Prejean v. Guillory*, 38 So. 3d 274, 279 (La. 2010) (quotation marks omitted); *see also Soverign Ins. Co. v. Tex. Pipe Line Co.*, 488 So. 2d 982, 984 (La. 1986) ("The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity.").

No. 19-30088

liability, death or claim is the result of the *sole negligence or willful misconduct* of an indemnitee.

(Emphasis added.)  The district court found that that provision unambiguously entitles Chevron to (1) indemnity in the *Bourgeois* suit and (2) attorney's fees and "ordinary litigation costs" in *Bourgeois* and the indemnity case against Jacobs.  The district court did not err in reaching that conclusion.

A.

The contracts' plain language requires Jacobs to indemnify Chevron for the *Bourgeois* settlement.  Settling *Bourgeois* caused Chevron to bear a $550,000 loss that is connected to Jacobs's contractual performance (*i.e.*, its welding work).  Jacobs's indemnity obligation applies regardless of whether Chevron was negligent or strictly liable, and it is undisputed that Bourgeois's mesothelioma wasn't caused solely by Chevron—he sued more than two dozen defendants, all of which allegedly exposed him to asbestos.

To avoid that seemingly inevitable conclusion, Jacobs posits that the clause precluding indemnity—"where such loss, damage, injury, liability, death or claim is the result of the *sole negligence or willful misconduct* of an indemnitee"—is ambiguous.  In Jacobs's view, that provision could mean two different things: "(1) [I]t could preclude indemnity for claims resulting solely from Chevron's 'negligence or willful misconduct,' or (2) it could preclude indemnity claims resulting from Chevron's 'sole negligence' or from Chevron's 'willful misconduct.'"

The district court erred, Jacobs avers, because it decided as a matter of law, and without considering extrinsic evidence of the parties' intent, that Chevron was entitled to indemnity.  To support its position, Jacobs identifies one allegation in Bourgeois's complaint that it suggests alleges that Chevron committed willful misconduct.  Specifically, Jacobs seizes on Bourgeois's

14

assertion that Chevron (as one of the Premises Defendants) "willfully withheld from workers in their facilities, including Wayne Bourgeois, . . . the dangers to the health of persons exposed to asbestos dust."

In two respects, that mischaracterizes the nature of Bourgeois's complaint. First, Jacobs selectively leaves out an important part of its quotation. Bourgeois's complaint states, in full, that the "*Premises defendants failed to inform workers in their facilities and/or* willfully withheld from workers in their facilities, including Wayne Bourgeois, of [sic] the dangers to the health of persons exposed to asbestos dust." (Emphasis added.) And second, the complaint explicitly refers to its allegations as "acts of negligence" and "negligent acts." When read in its entirety, the Bourgeois's complaint sounds in negligence and strict liability, not in some theory of intentional tort.

The contracts' indemnity provisions make it plain that Jacobs's duty to indemnify isn't released under those circumstances. And because the record doesn't contain other evidence that Chevron committed willful misconduct, the purported ambiguity Jacobs identifies isn't material. Chevron would be entitled to indemnity under *either interpretation*.

## B.

The analysis for attorney's fees and costs has three components: (1) whether attorney's fees are recoverable, (2) whether litigation costs are recoverable, and (3) if they are, whether they are recoverable for both *Bourgeois* and the instant suit. We consider each in turn.

### 1.

The contracts state that Jacobs's indemnity obligation includes "claims and reasonable attorneys' fees relating to any of the foregoing." But the parties disagree as to what "the foregoing" refers. Jacobs suggests that it refers only

to the clause immediately preceding it: "for loss or damage arising from liens, attachments or patent infringement." Under that theory, Chevron wouldn't be entitled to attorney's fees. Chevron counters that "the foregoing" modifies "each of the connected clauses preceding the comma before that phrase," including (1) "from and against any and all loss, damage, injury, liability to or death of any person"; (2) "for loss of or damage to property"; and (3) "for loss or damage arising from liens, attachments or patent infringement."

Chevron's position best comports with the contracts' text and structure. Grammatically, the clause "including claims and reasonable attorneys' fees relating to any of the foregoing" modifies each of the three action-defining clauses preceding it. Those three clauses aren't set off from each other by commas or other punctuation that would limit what the attorney's-fee clause modifies. To accept Jacobs's position, we would have to reject our common-sense interpretation for one that implausibly reads "any of the foregoing" to refer to only the clause immediately preceding it despite the presence of two other logically related clauses. Louisiana law forbids us from doing so.[16]

## 2.

Whether the contracts permit Chevron to recover its litigation costs is a closer question.[17] Although the contract doesn't directly speak to whether those costs are recoverable, the better reading is that "from and against any

---

[16] *See, e.g., Prejean*, 38 So. 3d at 279 ("[A] contract must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." (quotation marks omitted)).

[17] The district court found that "ordinary costs" were recoverable but "extraordinary costs" (*e.g.*, expert witness fees) were not. We needn't address whether "extraordinary costs" would have been recoverable under the contract, because Chevron hasn't filed a cross-appeal. *See Art Midwest Inc. v. Atl. Ltd. P'ship XII*, 742 F.3d 206, 211 (5th Cir. 2014) ("This circuit follows the general rule that, in the absence of a cross-appeal, an appellate court has no jurisdiction to modify a judgment so as to enlarge the rights of the appellee or diminish the rights of the appellant." (alteration omitted)).

and all loss" includes litigation costs. A contractual right to indemnity under Louisiana law is best understood to require the indemnitor to place the indemnitee in the position he would have occupied but for the actions giving rise to the underlying claim. *See Nassif v. Sunrise Homes, Inc.*, 739 So. 2d 183, 185 (La. 1999) ("Indemnity in its most basic sense means reimbursement."). Such a rule would give "effect to the very nature of indemnity, which is to make the [indemnitee] whole." *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 551 F.2d 1026, 1037 (5th Cir.), *opinion modified on reh'g*, 559 F.2d 268 (5th Cir. 1977).

That reasoning comports with our approach in federal maritime cases, in which "[t]he duty to indemnify and hold harmless includes costs and attorney's fees."[18] Moreover, *Naquin v. Louisiana Power & Light Co.*, 951 So. 2d 228 (La. App. 1st Cir. 2006), *cert. denied*, 949 So. 2d 441 (La. 2007), reinforces our conclusion. In *Naquin*, the contract required the indemnitor to hold the indemnitee "free and harmless with respect to any and all claims for loss." *Id.* at 231 (emphasis omitted). Interpreting that broad language, which also didn't expressly provide for the recovery of litigation costs, the court found that costs were recoverable because "costs are inherent in the defense of or pursuit of *any and all claims*."[19]

3.

Finally, we must determine whether the contracts entitle Chevron to

---

[18] *Lirette v. Popich Bros. Water Transp., Inc.*, 699 F.2d 725, 728 n.11 (5th Cir. 1983) (collecting cases standing for that proposition). We have, in the past, used indemnification principles from federal maritime cases when interpreting Louisiana indemnity law. *See Molett v. Penrod Drilling Co. (Molett I)*, 826 F.2d 1419, 1429 (5th Cir. 1987) ("While the decisions on which we rely were not based on Louisiana law, their logic is unassailable, and counsel have cited no Louisiana decisions to the contrary. We therefore apply their principles."), *abrogated on other grounds by Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995).

[19] *Naquin*, 951 So. 2d at 232–33. "[T]he trial court may render judgment for costs against any party as it may consider equitable." *Id.* at 233.

recover its attorney's fees and costs for prosecuting both *Bourgeois* and this case. "It is the general law of indemnity that although an indemnitee may recover from its indemnitors costs and expenses incurred in the defense of a claim against the principal, . . . the indemnitee may not recover those costs and expenses incurred simply establishing the indemnitees [*sic*] right to indemnification from the indemnitors." *State v. Laconco, Inc.*, 430 So. 2d 1376, 1385 (La. App. 1st Cir. 1983) (citing *Signal Oil & Gas Co. v. Barge W-701*, 654 F.2d 1164, 1178 (5th Cir. Unit A Sept. 1981)). When the contract so specifies, however, attorney's fees and costs may also be recovered for the follow-on indemnity action. *See Wuertz v. Tobias*, 512 So. 2d 1209, 1212 (La. App. 5th Cir. 1987).

Though the contracts don't specifically state as much, Chevron is entitled to recover attorney's fees and costs associated with both *Bourgeois* and this case. As we discussed above, the contracts' broad language—*i.e.*, that Jacobs would indemnify Chevron "from and against any and all loss"—is best read to require that Jacobs place Chevron in the position it would have occupied but for Bourgeois's claim. Absent recovery of its fees and costs in both the *Bourgeois* suit and this indemnity action, Chevron won't be made whole as the contracts contemplate.

*Naquin* again buttresses our reasoning. Recall that the indemnity provision there required the indemnitor to hold the indemnitee "free and harmless with respect to any and all claims for loss." *Naquin*, 951 So. 2d at 231 (emphasis omitted). Though that contract didn't explicitly define which fees and costs were recoverable, the court still found that the parties intended their indemnity provision to permit recovery of "damages, costs and attorney fees in the underlying tort claim as well as the indemnity claim." *Id.* at 232.

## V.

We next confront whether the district court erred when it determined

that Jacobs bore the burden of proof at trial to establish that Chevron's settlement with Bourgeois was unreasonable. "[A] district court's allocation of the burden of proof is a question of law subject to *de novo* appellate review." *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 326 (6th Cir. 2001); *see also Patel v. Ashcroft*, 104 F. App'x 966, 969 (5th Cir. 2004) (per curiam). "The question of who sustains the burden of proof is substantive and in a diversity case is therefore controlled by state law." *Benavides v. Mut. Life Ins. Co.*, 516 F.2d 393, 400 (5th Cir. 1975). Because the Louisiana Supreme Court hasn't addressed the issue, the district court necessarily made an *Erie* guess. "We do the same, *de novo*, on review." *Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176 (5th Cir. 2016) (italicization added).

For indemnity to be proper, the settlement amount must be reasonable. *See Terra*, 695 F.2d at 832 n.8. But Louisiana law isn't clear about which party in an indemnity action bears the burden of proof on that issue. To our knowledge, the caselaw provides only the following discussion:

> Under equitable principles of indemnity, in order for a settling indemnitee to support his indemnity claim he must prove actual liability to the original plaintiff and that the amount paid in settlement was reasonable. To avoid having to prove actual liability, the indemnitee should offer the indemnitor before any settlement is concluded the choice of (1) approving the settlement or (2) taking over the indemnitee's defense. If the indemnitor refuses to take either course, then the indemnitee will only be required to show potential liability to the original plaintiff to support his claim for indemnity.

*Morris v. Schlumberger, Ltd.*, 445 So. 2d 1242, 1246 (La. App. 3d Cir.), *cert. denied*, 449 So. 2d 1345 (La. 1984). But neither *Morris*—which interpreted federal maritime law, not Louisiana contract law—nor later-decided cases citing its discussion squarely govern this case.[20] And, theoretically, *Morris*'s

---

[20] *Morris*'s discussion was quoted in *Walters v. A-Way Tank Serv., Inc.*, 802 So. 2d 1, 5

analysis could support assigning the burden of proof to either party.[21] In other words, Louisiana caselaw provides us little to go on.

Two Fifth Circuit maritime indemnity cases—*Parfait* and *Wisconsin Barge*—offer the options. In *Parfait*, 484 F.2d at 305, we held that the indemnitee bore "the burden of showing that the settlement was reasonable in amount." Contrastingly, *Wisconsin Barge,* 546 F.2d at 1129–30, held that once the indemnitee establishes potential liability, "the burden shifts to the [indemnitor] to show that the amount of the settlement was unreasonable." Both rules have been cited by courts in this circuit, sometimes when applying state law and sometimes when applying federal maritime law.[22] Both rules can claim some support from relevant treatises,[23] and other jurisdictions have allocated the burden of proof on this issue to both parties.[24] But neither *Parfait*

---

(La. App. 3d Cir. 2000), and *Edwards v. Doug Ruedlinger, Inc.*, 9 So. 3d 279, 281–82 (La. App. 4th Cir.), *cert. denied*, 9 So. 3d 165 (La. 2009). But *Walters*, 802 So. 2d at 7, held that actual, rather than potential, liability was the governing rule. And *Edwards*, 9 So. 3d at 280, considered indemnity by operation of law, as distinguished from contractual indemnity.

[21] Although *Edwards* does cite *Morris*'s discussion to suggest that establishing potential liability also means that a settlement was at least presumptively reasonable, it does so in a conclusory manner with no reasoning. *Edwards*, 9 So. 3d at 282.

[22] *Compare Molett I*, 826 F.2d at 1429 (applying *Parfait*, albeit in an actual-liability rather than a potential-liability case) *and Conoco Inc. v. Boh Bros. Constr. Co.*, 191 F.R.D. 107, 114 (W.D. La. 1998) (applying *Parfait* in a potential liability case), *with Chevron Oronite Co. v. Cajun Co.*, No. CV 16-10594, 2017 WL 3438340, at *7 n.75 (E.D. La. Aug. 10, 2017) (applying *Wisconsin Barge*) *and Gilbert v. Offshore Prod. & Salvage, Inc.*, No. CIV.A. 95-122, 1997 WL 149959, at *12 (E.D. La. Mar. 21, 1997) (same).

[23] *Compare* Romualdo P. Eclavea, *Burden of Proof; Evidence*, 41 AM. JUR. 2D INDEMNITY § 36 (2019) ("Where a claim against an indemnitee has been settled, the burden falls on the indemnitee to prove that the settlement was reasonable.") *with* Allan D. Windt, *Settlements Entered into by Insured with Injured Party*, 2 INSURANCE CLAIMS AND DISPUTES § 6:29 (6th ed. 2019) ("The burden should, in general, be on the insurer, since its breach of contract gave rise to the insured's unauthorized settlement, to prove that the settlement amount was unreasonable.").

[24] *Compare Hapag-Lloyd A.G. v. G&P Trucking, Inc.*, No. CV 2:07-2751-JFA, 2009 WL 10711761, at *5 (D.S.C. Feb. 3, 2009) (allocating burden to indemnitee), *Pennant Serv. Co. v. True Oil Co.,* 249 P.3d 698, 704–05 (Wyo. 2011) (same), *Valloric v. Dravo Corp.*, 357 S.E.2d 207, 214 (W. Va. 1987) (same), *Ferrer v. Cty. of Wayne*, No. 308921, 2014 WL 4854294, at *8

nor *Wisconsin Barge* engaged in detailed reasoning on the issue, and neither rule has been cited by a Louisiana court applying Louisiana law.

Unsurprisingly, both Chevron and Jacobs would like to see the other side bear the burden of proof. Jacobs avers that the *Parfait* line of cases should control because the baseline rule in Louisiana civil cases is that the plaintiff bears the burden of proof as to each element of his claim.[25] *Wisconsin Barge*, Jacobs suggests, runs afoul of that command because it shifts the burden without requiring that the indemnitee establish a *prima facie* case of reasonableness. Chevron counters that the district court properly relied on *Wisconsin Barge* because Chevron took several steps to apprise Jacobs of the settlement negotiations, and Jacobs didn't object to the settlement amount despite having the opportunity to do so.

We agree with the district court that the Louisiana Supreme Court would adopt *Wisconsin Barge*'s rule. *Wisconsin Barge* is consistent with what little Louisiana caselaw there is, and it sensibly allocates the burden of proof in contractual indemnity cases where potential liability is the governing standard. Such a rule appropriately incentivizes indemnitors with sufficient notice—whether by being party to a contract or after receiving a tender of

---

(Mich. Ct. App. Sept. 30, 2014) (same), *and Cty. of Del. v. J.P. Mascaro & Sons, Inc.*, 830 A.2d 587, 593 (Pa. Super. Ct. 2003) (same), *with S. Cal. Gas Co. v. Syntellect, Inc.*, 534 F. App'x 637, 639 (9th Cir. 2013) (placing burden on indemnitor), *Oceaneering Int'l, Inc. v. Cross Logistics, Inc.*, No. CIV.A. H-11-3447, 2014 WL 2462810, at *28 (S.D. Tex. June 2, 2014) (same), *Berkley Reg'l Ins. Co. v. Weir Bros.*, No. 13 CIV. 3227, 2013 WL 6020785, at *13 (S.D.N.Y. Nov. 6, 2013) (same), *Tidyman's Mgmt. Servs. Inc. v. Davis*, 330 P.3d 1139, 1154 (Mont. 2014) (same), *Deminsky v. Arlington Plastics Mach.*, 657 N.W.2d 411, 428 (Wis. 2003) (same), *Cambridge Mut. Fire Ins. Co. v. Perry*, 692 A.2d 1388, 1391 (Me. 1997) (same), *and Old Republic Sur. Co. v. Eshaghpour*, No. M1999-01918-COA-R3-CV, 2001 WL 1523364, at *3 (Tenn. Ct. App. Nov. 30, 2001) (same).

[25] *See Lasha v. Olin Corp.*, 625 So. 2d 1002, 1005 (La. 1993) ("In Louisiana . . . civil actions, the plaintiff, in general, has the burden of proving every essential element of his case.").

defense or an invitation to approve a settlement[26]—either to take over the defense of the underlying action or to participate in the settlement process. At the same time, however, *Wisconsin Barge* still protects indemnitors from unscrupulous indemnitees who might settle claims for indiscreetly high amounts under the assumption that they could fall back on indemnification.

## VI.

Finally, we turn to whether Jacobs established that Chevron's settlement with Bourgeois was unreasonable. Because reasonableness was a factual finding, we review for clear error. *See Seahawk Liquidating Tr. v. Certain Underwriters at Lloyds London*, 810 F.3d 986, 990 (5th Cir. 2016). "[O]ur court may not find clear error if the district court's finding is plausible in light of the record as a whole, even if this court would have weighed the evidence differently." *Id.*

"[A] decision on whether a settlement amount is reasonable involves an overall evaluation of the extent of financial exposure the settling party faces if the party does not settle." *Molett v. Penrod Drilling Co. (Molett II)*, 919 F.2d 1000, 1006 (5th Cir. 1990) (cleaned up). "The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed."[27] Relevant too is whether the indemnitee tendered its defense to the indemnitor, whether it kept the indemnitor informed of the settlement negotiations, and whether the indemnitor had an opportunity to approve the settlement. *See LeRay v. Shell Oil Co.*, 493 So. 2d 249, 253 (La. App. 3d Cir. 1986); *Morris*,

---

[26] *See Fontenot*, 791 F.2d at 1216–17. Absent such notice, actual, rather than potential, liability would be the operative standard. *See id.* at 1216.

[27] *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1094 (1st Cir. 1989); *see also Kan. City S. Ry. Co. v. Pilgrim's Pride Corp.*, Civil Action No. 06-0003, 2010 WL 1293340, at *9 (W.D. La. Mar. 29, 2010) (applying Louisiana law).

No. 19-30088

445 So. 2d at 1246. "The reasonableness inquiry is usually fact intensive and can be legally complex." *Molett II*, 919 F.2d at 1006.

Jacobs avers that Chevron's settled the *Bourgeois* case for an unreasonably high amount because Chevron would have been only partially liable for Bourgeois's injuries under controlling Louisiana law. In Jacob's estimation, Chevron's pro-rata share of both wrongful death and survival damages would have been $241,000.[28] Based on that—and because Chevron "offered no evidence of Bourgeois' medical records, no testimony from his health care providers, no evidence of his medical expenses or other economic loss, and no testimony from his family"—Jacobs maintains that the settlement amount was unreasonable.

But Jacobs can't establish clear error just by showing that it had calculated Chevron's potential liability to be a lower amount. Jacobs's trial brief informed the district court of cases in which wrongful death awards were as much as $2.5 million for a surviving spouse and $750,000 for adult children.[29] And, Jacobs didn't object to the district court's taking judicial notice of other recent survival awards in Orleans Parish, which were matters of public record,

---

[28] That calculation was based on wrongful death for Bourgeois's spouse and three adult children, as well as survival damages. To arrive at that figure, Jacobs relied principally on *Roberts v. Owens-Corning Fiberglas Corp.,* 878 So. 2d 631 (La. App. 1st Cir.), *cert. denied,* 888 So. 2d 863 (La. 2004), and *Oddo v. Asbestos Corp., Ltd.,* 173 So. 3d 1192 (La. App. 4th Cir.), *cert. denied,* 180 So. 3d 308 (La. 2015). In *Roberts,* 878 So. 2d at 643, the plaintiffs received a $3,500,000 survival-damage award and a $250,000 wrongful death award to each adult child. In *Oddo,* 173 So. 3d at 1199, the widow received a $900,000 wrongful death award.

[29] *See Zimko v. Am. Cyanamid,* 905 So. 2d 465, 474 (La. App. 4th Cir. 2005), *cert. denied,* 925 So. 2d 538 (La. 2006) ($2.5 million to widow of 55-year-old decedent); *Williams v. Placid Oil Co.,* 224 So. 3d 1101, 1114 (La. App. 3d Cir.), *cert. denied,* 229 So. 3d 929 (La. 2017) ($750,000 to each adult child of 59-year-old deceased mother). We note that the wrongful death award in *Zimko* was reduced by 50% on appeal. *See Zimko,* 905 So. 2d at 493. But the court reduced that award only because it found that one of the defendants, who was on the hook for a share of the damages, wasn't liable. *Id.* In other words, the reduction wasn't related to any infirmity with the reasonableness of the damage amount.

of between $7.55 million and $12 million.[30]   A quick back-of-the-envelope calculation[31]—using the $2.5 million, $750,000, and $7.55 million figures, respectively—yields a $567,500 estimate for Chevron's share of the damages. Using the $12 million figure for survival damages, Chevron's share of the total damages would be $790,000.  Based on that, the district court plausibly could have concluded that $550,000 was well within the reasonable range of settlement.  We are, therefore, duty-bound to affirm.

Moreover, Jacobs's position also completely ignores Chevron's actions related to the settlement.  Chevron tendered its defense to Jacobs more than two months before a settlement was finalized, kept Jacobs apprised of the settlement negotiations even though it refused Chevron's tender, and offered Jacobs a chance to participate in those discussions.  Chevron twice informed Jacobs that it believed that it could settle the *Bourgeois* action for between $500,000 and $600,000.  Nevertheless, Jacobs declined to participate and never objected to the settlement amount, despite being informed that "Chevron may proceed against Jacobs for all costs of defense and settlement."  We decline Jacobs's invitation to play Monday-morning quarterback when it refused to step on the field with time still left on clock.

\* \* \* \*

The district court committed no reversible error.  The judgment is AFFIRMED.

---

[30] The district court also took judicial notice of a $12 million combined wrongful death and survival damages verdict for a decedent who was 89 years old, almost twenty-five years older than Bourgeois was when he died.

[31] For this calculation, we use the same method for which Jacobs advocated in the district court.  That method prorated a 1/25th share of wrongful death damages and a 1/20 share of survival damages to Chevron.