# United States Court of Appeals
## for the Fifth Circuit

_____

No. 22-30164

_____

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2023

Lyle W. Cayce
Clerk

WEYERHAEUSER COMPANY; WEYERHAEUSER NR COMPANY,

*Plaintiffs—Appellants*,

*versus*

BURLINGTON INSURANCE COMPANY; EVANSTON INSURANCE COMPANY,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:21-CV-905

_____

Before WIENER, HIGGINSON, and WILSON, *Circuit Judges*.

JACQUES L. WIENER, JR., *Circuit Judge*:

Plaintiff-Appellant Weyerhaeuser NR Company ("NR") entered into a manufacturing agreement with Simsboro Coating Services, LLC ("Simsboro"). That agreement required Simsboro to acquire commercial general liability insurance, which it obtained from Defendants-Appellees Burlington Insurance Company ("BIC") and Evanston Insurance Company ("EIC"). It further required that "Weyerhaeuser and its Subsidiaries" be named as additional insureds. However, NR's parent company, Weyerhaeuser Company ("W. Co."), was never added to the insurance

policies that Simsboro obtained from EIC and BIC. This insurance coverage dispute arose after several personal injury lawsuits were filed against Simsboro and W. Co. in state court. After those lawsuits settled, W. Co. and NR sued BIC and EIC, demanding that they defend and indemnify W. Co. and NR. EIC and BIC then filed Rule 12(b)(6) motions, which were granted by the district court. We AFFIRM.

## I. Factual and Procedural Background

Plaintiff-Appellant NR is a wholly-owned subsidiary of W. Co. (collectively, "Weyerhaeuser"), which is "one of the world's largest private owners of timberlands, [and] . . . one of the world's largest manufacturers of wood products." According to Plaintiffs-Appellants, NR was founded in 2009 for the sole purpose of holding W. Co.'s taxable businesses. Weyerhaeuser asserts that during the timeframe relevant to this case, however, NR conducted all of Weyerhaeuser's operations except for timberland ownership, including Weyerhaeuser's wood products manufacturing business.

In March 2015, NR entered into a manufacturing agreement (the "Agreement") with Simsboro. Under the Agreement, Simsboro would aid in the manufacture of Weyerhaeuser's "Trus Joist TJIs" product by coating wooden floor joists with a proprietary fire-retardant coating known as "Flak Jacket." The coating work at issue was to be performed in a Weyerhaeuser facility located in Simsboro, Louisiana. The Agreement required Simsboro to obtain commercial general liability ("CGL") insurance, under which "Weyerhaeuser and its Subsidiaries" would be named as "Additional Insured[s]." The Agreement also contained an indemnification provision whereby Simsboro agreed to "indemnify, defend, and hold harmless Weyerhaeuser, and its parent company . . . against all claims, damages, fines, penalties, costs, liabilities, or losses" arising from Simsboro's negligence, other tortious fault, intentional misconduct, and other situations.

No. 22-30164

Pursuant to the Agreement, Simsboro obtained CGL policies[1] (the "CGL Policies") from Defendant-Appellee Burlington BIC and an excess insurance policy[2] (the "Excess Policy") from Defendant-Appellee EIC. NR was added as an "additional insured" on the CGL Policies, and the Excess Policy incorporated this endorsement by reference. W. Co., however, was never added as an additional insured on the CGL Policies.

Between October 2017 and July 2018, three separate personal injury lawsuits were filed in Louisiana and Washington against Simsboro and W. Co. in connection with work performed under the Agreement. The plaintiffs, who included former Simsboro employees and their spouses, alleged that they were exposed to dangerous levels of formaldehyde because of the coating work done at W. Co.'s Simsboro, Louisiana facility. The plaintiffs alleged that (1) W. Co. owned and controlled the formula and specifications for the Flak Jacket coating; (2) W. Co. altered a previous Flak Jacket formula, creating a new formula that contained dangerous levels of formaldehyde; (3) W. Co. was aware of the dangers of formaldehyde exposure but did not warn or otherwise notify the Simsboro employees; and (4) some of those employees suffered physical ailments as a result. The Louisiana-based lawsuits against Simsboro and W. Co. alleged violations of the Louisiana Products Liability Act, LA. CIV. CODE art. 2800, negligence under LA. CIV. CODE arts. 2315 & 2316, and strict liability under LA CIV. CODE art.

---

[1] The CGL Policies include policy number 245BW35682, which took effect on May 18, 2016, and expired on May 18, 2017, and policy number 245BW39882, which took effect on May 18, 2017, and expired on May 18, 2018.

[2] The Excess Policy (policy number MKLV4EUL100784) would insure Simsboro after the BIC policy limit was exhausted. The Excess Policy took effect on May 18, 2017, and expired on May 18, 2018.

2317.1. The Washington-based lawsuit against W. Co. involved an alleged violation of the Washington Products Liability Act, RCW 7.72, *et seq.*

In September 2020, all parties to the lawsuits mediated and reached a settlement. W. Co. then demanded that BIC and EIC defend and indemnify it for the costs of settling the lawsuits, but BIC and EIC refused to do so. As a result, W. Co. and NR sued EIC, BIC, and Simsboro in the Western District of Louisiana, asserting breach of contract claims against those three defendants, plus a prompt-payment violation against BIC. Weyerhaeuser asserted that BIC and EIC knew that W. Co. was an additional insured under the Agreement, thus triggering EIC's and BIC's duty to defend and indemnify W. Co. in the underlying lawsuits. Weyerhaeuser also asserted, in the alternative, that the Agreement qualifies as an "insured contract" under the CGL Policies, and thereby manifested a clear intent to include W. Co. and NR as third-party beneficiaries to the policies.

BIC and EIC each filed Rule 12(b)(6) motions, asserting that dismissal was appropriate because W. Co. had failed to state claims for breach of contract and lack of prompt payment. EIC and BIC argued that they had no duty to compensate, defend, or indemnify W. Co. because (1) W. Co. was not a named or additional insured in the policies, (2) there was no mutual mistake among them, and (3) the underlying personal injury lawsuits were filed only against W. Co. and not NR too. In its opposition to the motions, Weyerhaeuser reasserted the allegations in its complaint and also asserted that (1) contract reformation was warranted because of a mutual mistake, and (2) EIC and BIC had waived the right to deny coverage to Weyerhaeuser.

Before considering Defendants-Appellees' motions to dismiss, the Magistrate Judge ordered Weyerhaeuser to amend its complaint to clarify the citizenship of Simsboro for diversity jurisdiction. Weyerhaeuser complied but did not add any other factual allegations pertinent to its opposition to the

motions to dismiss. After reviewing the amended complaint, the Magistrate Judge prepared a Report and Recommendation recommending that both motions to dismiss be granted. The Magistrate Judge reasoned that Weyerhaeuser had failed to state breach of contract and prompt payment claims against BIC and EIC because W. Co. was not named as an additional insured in the policies and NR was not sued in the underlying personal injury lawsuits. The Magistrate Judge also ruled that W. Co. could not be an indemnitee or a third-party beneficiary of the policies.

The district court conducted a *de novo* review of the record, adopted the Magistrate Judge's Report and Recommendation, and granted both motions to dismiss. The district court entered a Rule 54(b) judgment of dismissal, and Plaintiffs-Appellants timely appealed.

## II. STANDARD OF REVIEW

We review a motion to dismiss *de novo*, accepting all well-pleaded facts as true and drawing all inferences in favor of the plaintiff.[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] Conclusional allegations, naked assertions, and "formulaic recitation[s] of the elements of a cause of action will not do."[5] In its review of a motion to dismiss, the district court is limited to the contents of the pleadings, including attachments thereto.[6] However, "'[d]ocuments that a defendant attaches to

---

[3] *Marks v. Hudson*, 933 F.3d 481, 485 (5th Cir. 2019).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Id.*

[6] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

No. 22-30164

a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claims.'"[7]

## III. ANALYSIS

Weyerhaeuser asserted three claims in its amended complaint: (1) breach of contract against Simsboro; (2) breach of contract against BIC and EIC; and (3) violation of Louisiana Insurance Code § 22:1892, which involves prompt payment. The district court dismissed all claims against BIC and EIC. Only the breach of contract claims against BIC and EIC are at issue in this appeal because the prompt payment claim was waived.[8]

Weyerhaeuser contends that BIC and EIC clearly breached the CGL Policies and the Excess Policy by failing to defend and indemnify W. Co. and NR as additional insureds or third-party beneficiaries in connection with the underlying personal injury lawsuits. The CGL Policies and the Excess Policy[9] are contracts, so the general rules of Louisiana contract interpretation

---

[7] *Id.* (alteration in original) (quoting *Venture Assocs. Cop. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

[8] Weyerhaeuser did not brief the district court's dismissal of its claim under Louisiana Insurance Code § 22:1892. Defendants-Appellees raised that issue in their briefs, alleging that Weyerhaeuser waived this claim on appeal. Weyerhaeuser contends that it did not waive this claim because "[t]he basis for the District Court's dismissal of these claims is entirely subsumed within the errors set forth in Weyerhaeuser's opening brief." Defendants-Appellees correctly point out, however, that it is well-settled in this circuit that "an argument not raised in an appellant's original brief as required by [Rule 28] is waived." *See United States v. Ogle*, 415 F.3d 382, 383 (5th Cir. 2005). Accordingly, Weyerhaeuser's prompt payment claim under Louisiana Insurance Code § 22:1892 was waived on appeal.

[9] It is important to note that EIC's insurance obligations under the Excess Policy were not activated unless the underlying CGL Policy was exhausted. EIC raised this issue in the proceedings below, asserting that Weyerhaeuser failed to sufficiently plead exhaustion. The district court, through the Magistrate Judge, held that it was unnecessary to reach this issue. EIC raised additional issues, such as whether a total pollution exclusion barred coverage and whether Weyerhaeuser had obtained its consent to settle, but these issues were not analyzed in the Magistrate Judge's Report and Recommendation.

apply.[10] The elements of a breach of contract claim under Louisiana law are: (1) the existence of a contract; (2) a party's breach thereof; and (3) resulting damages.[11] It is well settled that "[t]he party claiming the rights under the contract bears the burden of proof."[12] The Louisiana Civil Code states that "[t]he judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract."[13] "If the wording is clear and unambiguous with regard to the parties' intent, the insurance policy must be enforced as written."[14] Moreover, "[t]he rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent."[15]

### A. *Whether BIC and EIC had a duty to defend W. Co. and NR as additional insureds*

An "insurer's duty to defend is nevertheless measured by the allegations of the petition even though the insurer may have determined that there was no coverage on the basis of known or ascertainable facts."[16] This analysis is known as the "eight-corners rule," under which the insurer must

---

[10] *Bernard v. Ellis*, 2011-2377, (La. 7/2/12); 111 So. 3d 995, 1002; *see also Mayo v. State Farm Mut. Auto. Ins. Co.*, 2003-1801, (La. 2/25/04); 869 So. 2d 96, 99 (citing La. Civ. Code art. 2045).

[11] *1100 S. Jefferson Davis Parkway, LLC v. Williams*, 14-1326, p. 5 (La. App. 4 Cir. 5/20/15); 165 So. 3d 1211, 1216, *writ denied*, 15-1449 (La. 10/9/15); 178 So. 3d 1005.

[12] *Id.*

[13] *Mayo*, 869 So. 2d at 909 (citing La. Civ. Code art. 2045).

[14] *Ilgenfritz v. Canopius U.S. Ins.*, 51,540-CA (La. App. 2 Cir. 8/9/17); 243 So. 3d 1109, 1112.

[15] *Mayo*, 869 So. 2d at 99–100.

[16] *Benoit v. Fuselier*, 195 So. 2d 679, 683 (La. App. 3 Cir. 1967).

look to the "four corners" of the plaintiff's petition and the "four corners" of the insurance policy to determine whether it owes that duty to the plaintiff.[17] The duty to defend under Louisiana law is generally broader than an insurer's liability for damage claims, and an insurer is typically "obligated to furnish a defense unless the petition unambiguously excludes coverage."[18] Furthermore, "the allegations of the petition are liberally interpreted" when determining the duty to defend the insured.[19] The district court applied the eight-corners rule via the Report and Recommendation, and held that the allegations in the personal injury lawsuits pertained only to W. Co. and Simsboro—not to NR, the only named Additional Insured.

Weyerhaeuser takes issue with the district court's application of the eight-corners rule, asserting that it was erroneous and "hyper-formalistic." Weyerhaeuser contends that the eight-corners rule should be loosely applied or disregarded altogether because extrinsic evidence is necessary for the analysis of its claims. Citing various Louisiana cases,[20] cases outside this circuit, and an insurance treatise,[21] Weyerhaeuser asserts that Louisiana courts may look beyond the eight corners of the complaint and the policy to determine whether the duty to defend exists. Regarding extrinsic evidence, Weyerhaeuser claims that the "subsequent pleadings and the insurers' actual

---

[17] *Hoffpauir v. Cajundome Comm'n*, 2020-423 (La. App. 3 Cir. 4/21/21); 318 So. 3d 334, 339.

[18] *Charley Am. Home Assur. Co. v. Czarniecki*, 230 So. 2d 253, 259 (La. 1969).

[19] *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 677 (5th Cir. 2001).

[20] *See, e.g.*, *Grimaldi Mech., L.L.C. v. The Gray Ins. Co.*, 2005-0695 (La. App. 4 Cir. 6/2/06); 933 So. 2d 887 *writ denied sub nom. Grimaldi Mech., L.L.C. v. Gray Ins. Co.*, 2006-2146 (La. 11/17/06); 942 So. 2d 536; *Bryant v. Motwani*, 96-1351 (La. App. 4 Cir. 10/30/96); 683 So. 2d 880, 884; *State Farm Fire and Cas. Co. v. Target Corp.*, 939 F. Supp. 2d 593 (M.D. La. 2011).

[21] STEVEN PLITT, ET AL., COUCH ON INSURANCE § 200:22 (3d ed. 2020).

or constructive knowledge left no doubt that [NR] was the true party in the underlying litigation."

Weyerhaeuser further contends that the alleged misnomer in the personal injury lawsuits presents a novel issue that requires this court to make an "*Erie* guess" regarding Louisiana insurance law. Courts may make an "*Erie* guess" when there is no decision on point from the state's supreme court regarding that issue, which in this case is the Louisiana Supreme Court.[22] An *Erie* guess would require this court to "employ Louisiana's civilian methodology, [and] first examine primary sources of law: the constitution, codes, and statutes."[23] In support, Weyerhaeuser relies on the treatise, COUCH ON INSURANCE, which states that "some jurisdictions . . . consider extrinsic evidence in determining whether the insurer has a duty to defend."[24] Weyerhaeuser notes that this court has relied on COUCH ON INSURANCE to make *Erie* guesses regarding Louisiana insurance law in at least two instances.[25] Indeed, in *Weaver v. CCA Industries, Inc.*, this court relied on that treatise when it made an *Erie* guess to determine how a policy exclusion should be interpreted, noting that "no Louisiana court has considered this particular exclusion in this context."[26] Further, in *In re*

---

[22] *See Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 654 (5th Cir. 2019).

[23] *Id.* (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)).

[24] COUCH ON INSURANCE § 200:22.

[25] *See, e.g.*, *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 342 (5th Cir. 2008); *In re Katrina*, 495 F.3d at 208.

[26] *Weaver*, 529 F.3d at 342.

*Katrina Canal Breaches Litigation*, this court relied on that treatise's definition of "flood" to assist in interpreting an insurance policy.[27]

COUCH ON INSURANCE does *not* instruct us to abandon the eight corners rule in this case, however. The *Erie* guesses in *Weaver* and *In re Katrina* pertain to the interpretation of particular words or provisions in insurance contracts—not to the interpretation of Louisiana contract law canons. COUCH ON INSURANCE states that "a court has no obligation to examine evidence extrinsic in determining whether the liability insurer has a duty to defend the underlying action where the allegations of the complaint are not ambiguous."[28] Importantly, none of the cases which that treatise cites in support of considering extrinsic evidence apply Louisiana law.[29] Moreover, that treatise clearly states that "under Louisiana law, in determining whether [the] insurer has duty to defend, court[s] will look only to factual allegations in [the] complaint; statements of conclusions in [the] complaint that are unsupported by factual allegations will not trigger [the] duty to defend."[30] Weyerhaeuser's assertion that we must forego the eight-corners rule in favor of an "*Erie* guess" is therefore unavailing.

Moreover, as the Magistrate Judge's Report and Recommendation correctly points out, none of the Louisiana cases cited by Weyerhaeuser held that pleadings outside the complaint may extend a duty to defend an entity that is *not named* in the underlying suit. For example, in *Grimaldi Mechanical, L.L.C. v. The Gray Insurance Co.*, the Louisiana Fourth Circuit considered

---

[27] *In re Katrina*, 495 F.3d at 212.

[28] COUCH ON INSURANCE § 200:22.

[29] *Id.*

[30] *Id.* (citing *Liberty Mut. Ins. Co. v. Jotun Paints, Inc.*, 555 F. Supp. 2d 686 (E.D. La. 2008)).

the reconventional demand and corresponding exhibits of an adverse party to interpret coverage—but only in relation to the *named* insured.[31] The court noted that the facts of the case were "somewhat of an anomaly," but it still applied the eight-corners rule.[32] In *Bryant v. Motwani*, the Louisiana Fourth Circuit clearly endorsed the eight-corners rule, holding that "[t]he duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence."[33] Finally, in *State Farm Fire and Casualty Co. v. Target Corp.*, the U.S. District Court for the Middle District of Louisiana considered the original petition and the additional insured's third party demand only against the *named* insured.[34] Louisiana state and federal courts have consistently rejected loosening or abandoning the eight-corners rule.[35] We see no reason to stray from the eight-corners rule here.

A simple application of the eight-corners rule in this case shows that the duty to defend was not triggered by the complaints in the underlying personal injury lawsuits. As a preliminary matter, the CGL Policies do not list W. Co. as an additional insured; neither does the Excess Policy, which incorporates the CGL Policies by reference. The three petitions in the

---

[31] 933 So. 2d at 892.

[32] *Id.* at 897.

[33] 683 So. 2d at 884.

[34] 939 F. Supp. 2d at 602.

[35] *Kent & Smith Holdings, LLC v. HDI Glob. Ins. Co.*, 344 F. Supp. 3d 878, 882 (M.D. La. 2018) ("Under Louisiana's 'Eight Corners Rule,' duty to defend must be analyzed by applying the allegations of the complaint without resort to extrinsic evidence."); *Seilham v. Commonwealth Land Title Ins. Co.*, 360 F. Supp. 3d 412, 423 (E.D. La. 2018) ("Thus, in evaluating an insurer's duty to defend, a court examines only the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence." (internal quotes and citations omitted)).

underlying lawsuits do not mention NR at all, and the allegations relate only to NR's parent company, W. Co. The complaints assert that (1) W. Co. owned and controlled the formula and specifications for the Flak Jacket coating; (2) W. Co. altered a previous Flak Jacket formula, creating a new formula that contained dangerous levels of formaldehyde; and (3) W. Co. was aware of the dangers of formaldehyde exposure but did not warn or notify the Simsboro employees. The petitions clearly define W. Co. as "one of the world's largest private owners of timberlands" and assert facts concerning high-level corporate actions and responsibilities—not the actions of its wholly-owned subsidiary, NR. We therefore conclude that EIC and BIC did not have a duty to defend W. Co. and NR and that they did not breach their defense obligations under the CGL Policies and the Excess Policy.

## B. *Whether BIC and EIC had a duty to indemnify W. Co. and NR as additional insureds*

This court has distinguished the duty-to-defend inquiry from the duty-to-indemnify inquiry, explaining that "[w]hile factual inquiries beyond the complaint are prohibited with respect to the duty to defend, they are indispensable in assessing the duty to indemnify."[36] In other words, courts may consider extrinsic evidence to determine whether an insurer has a duty to indemnify.[37] In *Chevron Oronite Co., L.L.C. v. Jacob Field Services North America, Inc.*, this court held that, "[a]s a general rule, one seeking indemnity for a settlement must show actual liability to recover."[38] Thus, the duty to

---

[36] *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009).

[37] *Id.*

[38] *Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 226 (5th Cir. 2020) (quoting *Sullivan v. Franicevich*, 2004-0321 (La. App. 4 Cir. 3/9/05); 899 So. 2d 602, 609, *cert. denied*, 902 So. 2d 1051 (La. 2005)).

No. 22-30164

indemnify often arises "after judgment has been entered in the underlying liability case."[39]

This court has recognized two exceptions to that rule. First, when there is a written contract, "the indemnitee only need show potential, rather than actual liability."[40] Second, if "the defendant tenders the defense of the action to the indemnitor," the party seeking indemnity may show potential rather than actual liability.[41] This court has cautioned that an "indemnitee's unilateral acts, albeit reasonable and undertaken in good faith, cannot bind the indemnitor; notice and an opportunity to defend are the indispensable due process satisfying elements."[42]

Weyerhaeuser alleges that BIC breached its duty to indemnify it by failing to do so in connection with the settlement of the underlying personal injury lawsuits. Weyerhaeuser further alleges that EIC breached its duty to indemnify it because the CGL Policies "have been or will be exhausted." Weyerhaeuser contends that the district court erred in finding that BIC and EIC had no duty to indemnify because that court incorrectly subsumed the indemnification inquiry in its analysis of the duty to defend. Quoting a 2009 case from this circuit, Weyerhaeuser asserts that "[a]n insurer's duty to defend suits on behalf of an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim."[43] Weyerhaeuser contends that the atypical nature of this case necessitates a

---

[39] *Martco*, 588 F.3d at 872.

[40] *Chevron Oronite Co.*, 951 F.3d at 226 (quoting *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1216–17 (5th Cir. 1986)).

[41] *Id.*

[42] *Parfait v. Jahncke Serv., Inc.*, 484 F.2d 296, 304 (5th Cir. 1973).

[43] *Martco Ltd.*, 588 F.3d at 872.

separate analysis incorporating "factual information beyond the original petitions." Weyerhaeuser further asserts that extrinsic evidence, such as subsequent pleadings in the personal injury lawsuits, "indisputably trigger[s] Appellees' duty to indemnify Weyerhaeuser."

The district court, via the Magistrate Judge's Report and Recommendation, analyzed the duty to defend in conjunction with the duty to indemnify, and concluded that EIC and BIC had no duty to indemnify Weyerhaeuser in the underlying lawsuits. The district court pointed out that "[i]t is well established that the duty to defend in Louisiana law is generally broader than an insurer's liability for damage claims," and that, since EIC and BIC did not have a duty to defend Weyerhaeuser in the underlying suits, there was no duty to indemnify Weyerhaeuser. In support of that theory, the district court relied on a Louisiana Third Circuit case which held that "[l]ogic dictates that if the policy unambiguously excludes coverage for purpose[ ] of an insurer's duty to defend, the insurer owes no duty to pay the sums its insured is legally obligated to pay."[44] The district court emphasized that NR was never named in the underlying lawsuits and that NR was not alleged to have participated in or funded the settlements.

Weyerhaeuser correctly asserts that the duty to indemnify and the duty to defend involve distinctly different analyses, but engaging in those separate analyses still results in the same outcome. The underlying petitions do not name NR and were never amended to add NR. And, although Weyerhaeuser generally alleges that NR participated in the settlement and funded it, it provides no evidence to support that allegation. Moreover, it is unclear whether the "possibility of liability" exception even applies because

---

[44] *Chalmers, Collins & Alwell, Inc. v. Burnett and Co.*, (La. App. 3 Cir. 10/7/15); 175 So. 3d 1100.

No. 22-30164

(1) NR is not a party to the written contracts, i.e., the CGL Policies or Excess Policy, and (2) neither BIC nor EIC tendered a defense in the underlying lawsuits.[45] In any event, a careful examination of the underlying state court petitions shows that the plaintiffs described W. Co. and its functions, knowledge, and responsibilities in detail. Even when construed liberally, the complaints do not appear to have asserted allegations against NR. Based on our well-settled precedent, Weyerhaeuser has not shown actual liability of NR sufficient to trigger BIC and EIC's indemnity obligations.

Weyerhaeuser further asserts that it adequately placed EIC and BIC on notice of NR's potential liability by sending formal letters to BIC and Simsboro ahead of the September 2020 mediation. Weyerhaeuser claims that it sent five letters to Simsboro which "demanded that Simsboro notify its insurance carriers of Weyerhaeuser's tender and the underlying claims." Weyerhaeuser also alleges that it sent a letter to BIC in July 2020, notifying BIC that it had breached its duty to defend Weyerhaeuser in relation to the underlying lawsuits. Notifying an indemnitor ahead of settlement and giving it the opportunity to defend may be sufficient to show "potential liability,"[46] but that exception only applies to parties to a written agreement.[47] W. Co. is not a party to the insurance policies between Simsboro and BIC and EIC, so the district court correctly held that BIC and EIC had no duty to indemnify Weyerhaeuser in connection with the underlying personal injury lawsuits.

---

[45] *Chevron Oronite Co.* instructs that "one seeking indemnity must show actual liability to recover." 951 F.3d at 226. One may show "potential liability" when there is a written contract or when the defendant tenders a defense of the action. *Id.*

[46] *See Parfait*, 484 F.2d at 305 (holding that "[i]f the indemnitor declines to take either course, then the indemnitee will only be required to show potential liability to the original plaintiff").

[47] *Chevron Oronite*, 951 F.3d at 226.

## C. *Whether contract reformation is an available remedy*

Weyerhaeuser asserts that a "mutual mistake" occurred with respect to W. Co.'s exclusion as an additional insured and that it sufficiently raised this as an alternative ground for coverage. Weyerhaeuser contends that, because of that mutual mistake, the CGL Policies should be reformed to include W. Co. as an additional insured. Weyerhaeuser asserts that the Magistrate Judge incorrectly applied the summary judgment standard when evaluating mutual mistake and "improperly demanded 'evidence' of the mistake." Finally, Weyerhaeuser alleges that the Magistrate Judge erred in denying it the opportunity to amend its complaint to allege mutual mistake under Rule 15(a) of the Federal Rules of Civil Procedure.

Under Louisiana law, a written insurance contract may be amended to conform to the "true intent of the parties."[48] Reformation "is an equitable remedy" which is available "only to correct mistakes or errors in written instruments only when such instruments, as written, do not express the true contract of the parties."[49] To demonstrate that reformation is warranted, the movant must show, "by clear and convincing evidence, that a mutual mistake has been made."[50] When, as here, a plaintiff raises an argument for the first time in response to a dispositive motion, the court may consider those claims and arguments as a motion to amend under Rule 15(a)(2).[51] This rule states that leave to amend "should be freely given when justice so requires."[52]

---

[48] *Teche Realty & Inv. Co. v. Morrow*, 95-1473 (La. App. 3 Cir. 4/17/96); 673 So. 2d 1145, 1147 (citing *Agurs v. Holt*, 95 So. 2d 644 (1957)).

[49] *Agurs*, 95 So. 2d at 645.

[50] *Motors Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 203 (5th Cir. 1990).

[51] Fed. R. Civ. P. 15(a)(2).

[52] *Id.*

However, courts have discretion to deny such leave on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment."[53] "Leave to amend is in no way automatic, but the district court must possess a substantial reason to deny a party's request for leave to amend."[54]

The district court held that Weyerhaeuser insufficiently pleaded mutual mistake and therefore "failed to meet their heavy burden to warrant reformation." The court explained that "to warrant reformation of the Policy, Weyerhaeuser and NR must show that Burlington and Simsboro made a mutual mistake by failing to include Weyerhaeuser as an additional insured." The district court pointed out that the Agreement clause requiring Simsboro to add W. Co. as an additional insured does not evince BIC/EIC's and Simsboro's mutual intent to include W. Co. as an additional insured. In support, that court cited *Certain Underwriters at Lloyd's, London v. First Petroleum, Inc.*, which held that an insurer is not obligated to defend a company that was not a named or additional insured but was excluded because of the alleged fault of the insurance agent or insurer.[55] The district court further noted that Weyerhaeuser raised this contention for the first time in its motion to dismiss and failed to assert it in its original and amended complaints. The court chose not to construe that new claim as a motion to amend under Rule 15(a), concluding that an "amendment would be futile."

---

[53] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014); Fed. R. Civ. P. 15(a)(2).

[54] *Id.* (internal citation omitted).

[55] 13-cv-2226, 2014 WL 4929316 at *5 (W.D. La. Oct. 1, 2014).

First, we must clarify the record regarding the district court's alleged denial of leave to amend Weyerhaeuser's complaint. Weyerhaeuser asserts that the district court erred in denying leave to amend its first amended complaint. However, Weyerhaeuser never filed a motion for leave to amend its complaint. EIC's and BIC's motions to dismiss were filed on June 1, 2021, and Weyerhaeuser filed its opposition on August 3, 2021. Under Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b), (2), or (f)."[56] Weyerhaeuser did not seek to amend its complaint to remedy its deficiencies after reviewing BIC's and EIC's motions to dismiss. Instead, on September 21, 2021, Weyerhaeuser, EIC, and BIC filed a consent motion requesting that the district court abate the responsive pleading deadline to the first amended complaint until after it ruled on the pending motions to dismiss. That motion was granted by the district court. The Magistrate Judge noted that a claim raised for the first time in opposition to a dispositive motion *could be construed* as a motion to amend under Rule 15(a) but chose not to construe it as such.

We must also clarify whether the district court, via the Report and Recommendation, applied the correct burden of proof to Weyerhaeuser's contract reformation claim. Weyerhaeuser argues that, by requiring "clear and convincing evidence," the district court incorrectly applied the summary judgment standard at the motion-to-dismiss stage. However, it is well settled in this court and in Louisiana that "clear and convincing evidence" is the appropriate burden of proof for contract reformation actions at various stages of litigation, including the motion-to-dismiss stage.[57] The district court thus

---

[56] FED. R. CIV. P. 15(a)(1)(B).

[57] *See, e.g.*, *Motors Ins. Co.*, 917 F.2d at 203 (requiring "clear and convincing evidence" at the motion to dismiss stage); *Farmers-Merchants Bank & Tr. Co. v. St.*

correctly required "clear and convincing evidence" for Weyerhaeuser to prevail on its contract-reformation claim.

This circuit has cautioned that "[r]eformation is warranted only, however, to embody the parties' *mutual* intent; otherwise, the courts would, in effect, be rewriting the contract."[58] In its briefing, Weyerhaeuser focuses on *Simsboro*'s knowledge and obligations, overlooking the fact that it must show, by clear and convincing evidence, that *BIC and EIC* participated in the mutual mistake. Weyerhaeuser presented no evidence that BIC and EIC knew that W. Co. was an additional insured when they issued policies to Simsboro. Because Weyerhaeuser has not shown that EIC, BIC, and Simsboro mutually intended to include W. Co. as an additional insured, contract reformation is not warranted.

Neither did the district court err by not construing Weyerhaeuser's reformation contention as a motion to amend its complaint. As explained above, the district court never actually denied Weyerhaeuser leave to amend its complaint. Moreover, Weyerhaeuser again had the opportunity to request leave to amend its complaint after the motions to dismiss were filed, but it did not do so. And, even if Weyerhaeuser had filed a motion for leave to amend, the district court would have had discretion to deny it based on the futility of such an amendment, Weyerhaeuser's repeated failure to cure deficiencies, and other factors.[59]

_____

*Katherine Ins. Co.*, 96-1138 (La. App. 3 Cir. 4/30/97); 693 So. 2d 876, 880, *writ denied*, 97-1867 (La. 10/31/97); 703 So. 2d 25 (requiring "clear and convincing evidence" at the no cause of action exception stage).

[58] *Motors Ins. Co.*, 917 F.2d at 203.

[59] *Marucci Sports, L.L.C.*, 751 F.3d at 378; Fed. R. Civ. P. 15(a)(2).

No. 22-30164

In summary, the district court, via the Report and Recommendation, correctly held that EIC and BIC do not have a duty to indemnify W. Co. and NR as additional insureds on the CGL Policies and the Excess Policy. The district court properly concluded that Weyerhaeuser inadequately pleaded mutual mistake and that contract reformation was unavailable as a potential remedy.

### D. *Whether BIC and EIC owed duties to defend and indemnify W. Co. and NR as third-party beneficiaries*

Weyerhaeuser asserts that W. Co. and NR are third-party beneficiaries of the CGL Policies and the Excess Policy, permitting them to sue EIC and BIC directly for breach of the contract. Weyerhaeuser contends that W. Co. and NR are third-party beneficiaries "by virtue of their right to contractual indemnity under an 'insured contract' [the Agreement] with the primary insured [Simsboro]." Weyerhaeuser presents this as an alternative argument to its assertion that W. Co. and NR are additional insureds on the policies.

In Louisiana, a plaintiff may sue under an insurance policy if that plaintiff is a third-party beneficiary of such policy.[60] The Louisiana Supreme Court articulated a three-part test to determine whether a contract confers third-party beneficiary status, known as a "*stipulation pour autrui*": "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of

---

[60] *Haddad v. Elkhateeb*, 2010-0214 (La. App. 4 Cir. 8/11/10); 46 So. 3d 244, 257 n. 11, *writ denied*, 49 So. 3d 895 (La. 2010); *see also Rogers v. Integrated Expl. & Prod., LLC*, 2018-CA-0425 (La. App. 4 Cir. 2/20/19); 265 So. 3d 880, 896, *writ denied*, 271 So. 3d 198 (La. 2019) ("If a party is neither a named insured nor an additional insured, he can nonetheless avail himself of the benefits of the policy if he can establish that he is a third party beneficiary.") (internal citations omitted).

the contract between the promisor and the promisee."[61] The court explained that "the party claiming the benefit bears the burden of proof"[62] when that party is neither a named or additional insured on the policy. Louisiana courts have recognized that indemnitees under "insured contracts" often qualify as third-party beneficiaries under the policies insuring such contracts.[63]

Weyerhaeuser contends that the district court erred in holding that W. Co. and NR are not third-party beneficiaries under the CGL Policies and the Excess Policy. Weyerhaeuser claims that the underlying personal injury lawsuits triggered Simsboro's duty to defend and indemnify NR and W. Co., thereby activating BIC's (and EIC's) duty to defend and indemnify W. Co. *and* NR. Weyerhaeuser points out that the CGL Policies define "insured contract" as "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage'" that "is caused, in whole or in part, by you or those acting on your behalf." Weyerhaeuser further asserts that the Agreement qualifies as an "insured contract" that "manifest[s] a clear intention to benefit any party whose liability was assumed."

The district court, via the Magistrate Judge's Report and Recommendation, disagreed with Weyerhaeuser's analysis, holding that Weyerhaeuser had insufficiently alleged facts showing that the CGL Policies and the Excess Policy manifested a clear intention to benefit Weyerhaeuser. Citing a Louisiana Fourth Circuit case, the district court explained that, even

---

[61] *Joseph v. Hosp. Serv. Dist. No. 2 of the Parish of St. Mary*, 2005-2364 (La. 10/15/06); 939 So. 2d 1206, 1212.

[62] *Id.*

[63] *See, e.g.*, *Rogers*, 265 So. 3d at 896-897; *Mabile v. Dow Chem*. Co., 2016-0577, (La. App. 1 Cir. 12/22/16); 2016 WL 7436587 at *7; *Cashman Equip. Corp. v. Rozel Operating Co.*, 854 F. Supp. 2d 406, 414 (M.D. La. 2012).

if Weyerhaeuser had demonstrated a *stipulation pour autrui*, the "insured contract" provision merely requires BIC and EIC to defend and indemnify the insured—not the indemnitee.[64] The court acknowledged that, when the Agreement and CGL Policies are read together, NR could have a third-party beneficiary indemnification claim against BIC. That court concluded, however, that "the burden remains on Weyerhaeuser to allege facts that manifest the clear intent of Burlington and Simsboro to provide a benefit to Weyerhaeuser," and that the burden was not carried here.

The district court did not err in determining that W. Co. and NR failed to state third-party beneficiary claims under the CGL Policies and Excess Policy. As discussed at length above, this court must avoid considering extrinsic evidence when determining a party's duty to defend. We are thus satisfied that BIC and EIC had no duty to defend W. Co. and NR as third-party beneficiaries. The indemnification inquiry, however, is fact intensive and may incorporate extrinsic evidence. The district court explained that because NR is listed on the CGL Policies as an additional insured and the CGL Policies might cover Simsboro's indemnification obligation arising from the Agreement, NR might be a third-party beneficiary of the policies with respect to indemnification. This is, of course, only if Weyerhaeuser met the burden imposed by the Louisiana Supreme Court's three-part test in *Joseph v. Hosp. Serv. Dist. No. 2 of the Parish of St. Mary*.[65]

A recent Louisiana Third Circuit Court of Appeal opinion lends clarity to this complex question. In *Savoy v. Kelly-Dixon, et al.*, the Louisiana Third Circuit Court of Appeal addressed a factually analogous situation involving BIC, offering persuasive authority in favor of BIC and EIC's

---

[64] *See Ordonez v. W.T. Grant Co.*, 297 So.2d 780, 783 (La. App. 4 Cir. 7/9/74).

[65] 939 So. 2d at 1212.

position.[66] That court held that a purported contractual indemnitee cannot rely on Louisiana's third-party beneficiary case law to create additional insured coverage.[67] The *Savoy* court distinguished and declined to follow the Louisiana Fourth Circuit's 2019 opinion in *Rogers v. Integrated Explorations and Products, LLC* that Weyerhaeuser relied on for its assertion of coverage.[68] The court instead looked to *Ordonez v. W.T. Grant Co.*, in which the Louisiana Fourth Circuit held that an insurer had no duty to defend the contractual indemnitee of its insured.[69] The *Savoy* court explained that "[i]f every indemnitee was a 'third party beneficiary' to a commercial liability policy then there would be no reason to have an additional named insured."[70] The *Savoy* court further noted that "[i]nsurance companies cannot be bound to carry extra insureds for no additional premiums paid."[71]

We agree with *Savoy*'s analysis and conclude that neither NR nor W. Co. is a third-party beneficiary of the CGL Policies under the Louisiana Supreme Court's test. In *Rogers*, the indemnification agreement at issue stated that indemnity was owed "EVEN IF SUCH CLAIMS ARE CONTRIBUTED TO OR CAUSED BY THE . . . ACTIVE OR PASSIVE NEGLIGENCE OF THE INDEMNIFIED PARTY OR ANY MEMBER OF ITS GROUP."[72] The Agreement, on the other hand, only provides

---

[66] 2022-318 (La. App. 3 Cir. 11/23/22); 353 So. 3d 981.

[67] *Id.*

[68] 18-425 (La App. 4 Cir. 2/20/19); 265 So. 3d 880, *writ denied*, 19-481 (La. 5/20/19); 271 So. 3d 198 (applying the *Joseph* test and finding that coverage extended to a contractual indemnitee).

[69] 297 So.2d at 780.

[70] *Savoy*, 353 So. 3d at 995.

[71] *Id.*

[72] 265 So. 3d at 891.

defense and indemnity to NR for claims arising out of Simsboro's *own* fault.[73] Similar to the agreement at issue in *Savoy*, the Agreement here does not evidence a clear intent to benefit third parties, such as NR and W. Co. The benefit is instead intended for the "Named Insured" (Simsboro) when it owes damages under an insured contract. Any benefit provided to a third party under the CGL Policies is not "manifestly clear" but is merely incidental. The district court correctly concluded that Weyerhaeuser failed to show that BIC and EIC had a duty to indemnify NR and W. Co. as third-party beneficiaries of the CGL Policies.

## IV. CONCLUSION

We AFFIRM the district court's dismissal of Weyerhaeuser's breach of contract claims and conclude that Defendants-Appellees had no duty to defend or indemnify W. Co. and NR as additional insureds or as third-party beneficiaries to the CGL Policies or Excess Policy.

---

[73] The Agreement further states that "no right to indemnity will exist in that portion of a Claim resulting from the negligence, tortious fault, or intentional misconduct of Weyerhaeuser, its officers, employees, contractors, and agents."