# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2025

Lyle W. Cayce
Clerk

———————

No. 24-30406

———————

Ellen Williams,

*Plaintiff—Appellant*,

*versus*

Integon National Insurance Company,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CV-5977

———————————————————————

Before Wiener, Stewart, and Southwick, *Circuit Judges*.

Jacques L. Wiener, Jr., *Circuit Judge*:

This case arises from an insurance dispute between plaintiff-appellant Ellen Williams and defendant-appellee Integon National Insurance Company ("Integon") after Integon failed to pay Williams for property repairs sustained as a result of Hurricane Ida. In the district court, Integon asserted that Williams lacked standing to sue on the policy because she was neither a named insured, additional insured, nor third-party beneficiary. Williams countered that she was a third-party beneficiary under Louisiana law. The district court agreed with Integon and granted its 12(b)(6) motion to dismiss. The court did so without offering Williams an opportunity to amend her

complaint, citing futility. Because we find that Williams might be able to plead plausible facts that support third-party beneficiary status, we REVERSE and REMAND with instructions.

## I.

Williams purchased a residential property in Houma, Louisiana, mortgaged by Flagstar Bank, but because she did not insure the home, Flagstar obtained a "lender-placed hazard insurance policy" from Integon at Williams's expense.[1] The policy named Flagstar as the "Insured" and Williams as the "Borrower." Williams paid all premiums on this policy and complied with all requirements in the policy at all relevant times. Importantly, Flagstar negotiated for a policy limit of $77,934, rather than opting to use its own insurable interest in the property to cap the liability risk. The policy also included the following salient provision:

> 13. Loss Payment. WE will adjust each LOSS with [Flagstar] and will pay [Flagstar]. If the amount of LOSS exceeds [Flagstar's] insurable interest, WE will pay BORROWER any residual amount due for the LOSS, not exceeding the Limit of Liability indicated on the NOTICE OF INSURANCE. Payment for LOSS will be made within thirty (30 days after receipt of satisfactory proof of LOSS from [Flagstar].

---

[1] This type of insurance is referred to as a "lender-placed" or "forced-placed" policy. One Louisiana federal district court described this type of policy as follows:

Forced Placed Insurance ("FPI") is a term used to describe instances where plaintiffs' mortgage lenders were forced to purchase policies of insurance from the Insurer Defendants to protect their respective interest in property as mortgage collateral when plaintiffs failed to maintain insurance for their property according to the terms of their respective mortgage loan agreements.

*In re Katrina Canal Breaches Consol. Litig.*, No. 9-1600, 2010 WL 11541602, at *1 (E.D. La. Apr. 1, 2010).

No. 24-30406

In August of 2021, Williams's home sustained damage as a result of Hurricane Ida.[2] Although Integon cooperated with Williams by inspecting the property and exchanging loss and repair estimates, Integon ultimately refused to pay for her property repairs in full. Williams sued Integon in the 32nd Judicial District Court for the Parish of Terrebonne, asserting breach-of-contract and bad-faith claims under Louisiana law. Integon removed to federal court on diversity grounds, then filed a Rule 12(b)(6) motion to dismiss.

Integon asserted that Williams lacked standing to sue under the policy because she was not a named insured, an additional insured, or a third-party beneficiary. Williams acknowledged that she was neither a named insured nor additional insured, but contended that she is a third-party beneficiary. She submitted that other courts "interpretating identical policy language at issue here" have held that a borrower who has a right to payments in excess of the lender's insurable interest may pursue insurance claims as a third-party beneficiary.

The district court disagreed and granted Integon's motion. That court acknowledged that there is a line of cases that supports Williams's position and another that supports Integon's. However, it ultimately agreed with the latter, reasoning that any benefit that flows to a borrower-mortgagor in the forced-placed lender policy context are "merely incidental" to the policy and thus cannot confer third-party beneficiary status on the borrower. In so concluding, the district court also denied Williams leave to amend her complaint, reasoning that any amendment would be futile because Williams

---

[2] We take the facts from Williams's petition because, in adjudicating a 12(b)(6) motion, the district court was required to construe those facts as true. *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

could not plead any set of facts that would show such benefits were more than incidental. Williams timely appealed.

## II.

This court has jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* a district court's dismissal under Rule 12(b)(6). *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Although an appellate court must typically limit such review to the contents of the pleadings, it may consider materials "that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). We take all well pleaded facts in the complaint as true. *Id.* at 498.

"We review denials of leave to amend a complaint for abuse of discretion." *Jack v. Evonik Corp.*, 79 F.4th 547, 564 (5th Cir. 2023). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend is in no way automatic, but the district court must possess a substantial reason to deny a party's request for leave to amend." *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 288 (5th Cir. 2023) (quotation omitted). Factors for the court to consider include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of the amendment." *Id.* (quotation omitted).

## III.

"In reviewing the district court's rulings in this diversity case, we apply the substantive law of" Louisiana. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009). The Louisiana civil code expressly permits stipulations *pour autrui*, providing that "[a] contracting party may stipulate a

benefit for a third person called a third party beneficiary." La. Civ. Code art. 1978;[3] *see also Andrepont v. Acadia Drilling Co.*, 231 So. 2d 347, 357 (La. 1969) ("[S]tipulations in favor of third persons . . . are favored in" Louisiana and "are specifically authorized in broad terms.").

The Louisiana Supreme Court has articulated three criteria that determine whether a contract benefits a third party: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promise." *Joseph v. Hosp. Serv. Dist. No. 2 of*

---

[3] In *In re Katrina*, the court stated that "[t]o establish a stipulation *pour autrui*, there must not only be a third party advantage, but the third party relationship must form *the consideration* for the contract, and the benefit may not be merely incidental to it." 2010 WL 11541602, at *7 (emphasis added). There, the court relied on a 1975 Western District of Louisiana decision to support that proposition. *Id.* (citing *City of Shreveport v. Gulf Oil Corp.*, 431 F. Supp. 1, 3–4 (W.D. La. 1975), *aff'd*, 551 F.2d 93 (5th Cir. 1977)).

When *City of Shreveport* was decided, article 1890 of the Louisiana Civil Code governed stipulation *pour autrui*. The court in *City of Shreveport* expressly relied on that code article, which stated this:

> A person may also, in his own name, make some advantage for a third person *the condition or consideration of a commutative contract*, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract cannot be revoked.

La. Civ. Code art. 1890 (emphasis added). That code article "was revised by Act 331 of 1984 and now appears as C.C. 1978." *Dartez v. Dixon*, 502 So. 2d 1063, 1065 n.1 (La. 1987). Louisiana Civil Code article 1978 states the following:

> A contracting party may stipulate a benefit for a third person called a third party beneficiary. Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.

La Civ. Code art. 1890. The revised code makes no mention of consideration. So, while some district courts still rely on the pre-amendment language (and cases citing the pre-amendment language), we hold that it is unnecessary to analyze consideration in the stipulation *pour autrui* context, given the amended code's language.

*Parish of St. Mary*, 939 So. 2d 1206, 1212 (La. 2006). "Each contract must be evaluated on its own terms and conditions" and "[t]he party claiming the benefit bears the burden of proof." *Id.* "A stipulation *pour autrui* is never presumed." *Id.* Although the district court decided this issue on the basis of the third criterion, we address each in turn.

First, "[t]he most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party." *Lee v. Safeco Ins. Co. of Am.*, No. 08-1100, 2008 WL 2622997, at *4 (E.D. La. July 2, 2008) (quoting *Joseph*, 939 So. 2d at 1212). Williams asserts that the loss payment provision entitling her to excess payments above Flagstar's insurable interest makes manifestly clear that the policy stipulates a benefit to her. We agree. In *Lee*, a federal district court applying Louisiana law evaluated the following provision in a lender-placed insurance policy:

> We will adjust all losses with you. We will pay you but in no event more than the amount of your interest in the "insured location." Amounts payable in excess of your interest will be paid to the "borrower" unless some other person is named by the "borrower" to receive payment.

*Id.* at *4. That court held that this manifested a clear intent to benefit the third-party borrower, Lee. *Id.*; *see also Martin v. Safeco Ins. Co.*, No. 06-6889, 2007 WL 2071662, at *2 (E.D. La. July 13, 2007) (evaluating an identical provision and concluding that it satisfies the clear manifestation prong); *Haley v. Am. Sec. Ins. Co.*, 643 F. Supp. 3d 604, 612 (E.D. La. 2022) (using *Lee*'s policy provision as an example of when clear manifestation is present). Moreover, this court has viewed *Lee*'s holding favorably, albeit in an unpublished opinion. *Williams v. Certain Underwriters at Lloyd's of London*, 398 F. App'x 44, 49 (5th Cir. 2010) ("Unlike in *Lee*, where AMC's contract with GICA clearly envisioned a benefit to Lee—the payment of any amount in excess of AMC's interest in the property—in the instant case, the Policy

does not envision a benefit to the Willamses."). In our view, this prong is satisfied in Williams's favor.

Next, we turn to whether "there is certainty as to the benefit provided" to Williams. *See Joseph*, 939 So. 2d at 1212. The district court acknowledged a line of cases that hold this prong is met when a plaintiff pleads damages that exceed the mortgagee's insurable interest in the property. *See Brown v. Am. Modern Home Ins. Co.*, No. 16-16289, 2017 WL 2290268, at *5 (E.D. La. May 25, 2017) (granting plaintiffs leave to amend their complaint to "allege specific facts demonstrating that the amount of the insurance claim against American Modern exceeds plaintiffs' current mortgage balance"); *Tardo v. Integon Nat'l Ins. Co.*, No. 23-296, 2023 WL 2757088, at *3 (E.D. La. Apr. 3, 2023) (same); s*ee also Dehart v. Integon Nat'l Ins. Co.*, No. 23-1351, 2023 WL 4846839, at *3 (E.D. La. July 28, 2023) (observing that "[t]he Fifth Circuit and this [c]ourt have, on numerous occasions, had the chance to consider whether homeowners whose properties were insured by lender-placed policies have the standing to sue as third-party beneficiaries to those contracts" and highlighting that "[i]n every case, the inquiry has centered on whether the loss claimed by the borrower exceeded the lender's insurable interest (the mortgage balance) and whether the language of the policy allowed the borrower to claim any amount exceeding that interest"). Unlike the district court, we conclude that this line of cases is persuasive. Since Williams asserted in her response to the motion to dismiss that her damages exceeded Flagstar's insurable interest, she can plead facts showing the benefit owed to her is certain.

Finally, we must determine whether this benefit was a mere incident of the contract. *See Joseph*, 939 So. 2d at 1212. The district court observed that some courts evaluating third-party beneficiary status in lender-placed policies have concluded that *any* benefit flowing to the borrower is merely

incidental, and found this line of cases persuasive. We disagree because those cases are distinguishable from the instant case.

For example, the district court relied on *Riley v. Southwest Business Corp.* for the proposition that all forced-placed policies share the same purpose and intent: "to protect [the mortgagee's] own security interest in the property, not to provide any sort of benefit for the mortgagor." No. 06-4884, 2008 WL 4286631, at *3 (E.D. La. Sept. 17, 2008). However, this blanket approach, without attention to the language of the Flagstar-Integon policy at issue here, is not consistent with the Louisiana Supreme Court's instruction that "[e]ach contract must be evaluated on its own terms and conditions." *See Joseph*, 939 So. 2d at 1212. In *Riley*, the benefit that flowed to the borrower was a stopgap coverage resulting from the borrower's own lapse in insurance. *Riley*, 2008 WL 4286631, at *1, *3. *Riley* did not involve policy language entitling the borrower to surplus payments that exceeded the lender's insurable interest; the issue was whether the *borrower* was entitled to the claim proceeds, or whether payments must be made to the *lender*. *Id.* at *1. If we are to evaluate the instant contract "on its own terms and conditions," *Riley* is of no help here.

The other cases on which the district court relied involve policies with different language or factual contexts that are also distinguishable. *See Dail v. Integon Nat'l Ins. Co.*, No. 23-6660, 2024 WL 363322, at *2 (E.D. La. Jan. 31, 2024) (involving policy language that provides the borrower a more limited right to recover certain residual loss payments); *Bedi v. Integon Nat'l Ins. Co.*, No. 23-3178, 2023 WL 8622146, at *1 (E.D. La. Dec. 13, 2023) (reaching its conclusion based on an unpersuasive analysis); *Gisclair v. Great Am. Assurance Co.*, No. 22-3556, 2023 WL 1765922, at *6 (E.D. La. Feb. 3, 2023) (involving a case in which the plaintiff did not argue that it was a third-party beneficiary, instead arguing subrogation); *In re Katrina Canal Breaches Consol. Litig.*, 2010 WL 11541602, at *7–8 (involving different policy

language); *Harrison v. Safeco Ins. Co. of Am.*, No. 06-4664, 2007 WL 1244268, at *4–5 (E.D. La. Jan. 26, 2007) (involving different arguments by the borrower in support of its third-party beneficiary status).

We conclude this analysis by observing that the cases in which a benefit *is* held to be a mere incident are also distinguishable. For example, in *Allen & Currey Mfg. Co. v. Shreveport Waterworks Co.*, a city resident sued the water company after a fire destroyed its building. 37 So. 980, 981 (La. 1905). The resident alleged that the contract between the city and the water company required fire hydrants be kept in good repair, but the Louisiana Supreme Court held the plaintiff lacked standing to sue because any benefit conferred by the city and water company's contract flowed to city residents incidentally. *Id.* at 981–82. Similarly, in *City of Shreveport v. Gulf Oil Corp.*, the contract at issue was between the State of Louisiana and Gulf whereby Gulf committed to provide petroleum products to state agencies. 431 F. Supp. 1, 1–2 (W.D. La. 1975), *aff'd*, 551 F.2d 93 (5th Cir. 1977). Although the City of Shreveport may have incidentally benefited from Louisiana's contract with Gulf, the court held that this was not enough to create a stipulation *pour autrui* because that benefit was too attenuated from the contract. *Id.* at 4–5 ("Finally, there are no ties of kinship or other circumstances indicating that the State intended to confer a gratuity upon the City.").

We hold that the loss payment provision of the Integon policy represents a clearly manifested intent to provide Williams with a certain benefit when the loss amount exceeds Flagstar's insurable interest in the property. That benefit is not merely incidental to the contract, but was expressly provided for in that enumerated circumstance. *See Joseph*, 939 So. 2d at 1213 (holding that the lack of certainty as to the benefit to the doctors meant that any benefit flowing to them would be merely incidental).

No. 24-30406

If Williams can show certainty as to the benefit owed to her under the policy—that is, if Williams can allege that the amount of loss exceeds Flagstar's insurable interest—then she has standing to pursue her claims as a third-party beneficiary. The district court, by relying on inapposite case law, abused its discretion in denying Williams's request to amend her complaint to plead such facts.

We REVERSE and REMAND with instructions to permit Williams to amend her complaint.